## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

FRANCISCO ZEPEDA, Y30997,    )
    )
      Plaintiff,    )
    )
vs.    )
    )
LATOYA HUGHES,    )    **Case No. 25-cv-1825-RJD**
DAVID MITCHELL,    )
JOHN BARWICK,    )
SGT. SPENCER,    )
SGT. HARPER, and    )
K. SMITH,    )
    )
      Defendants.    )

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Francisco Zepeda, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Centralia Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 while he was detained at Pinckneyville Correctional Center. In the Complaint (Doc. 1), Zepeda alleges that Defendants violated his rights related to excessive heat exposure and inadequate clothing for summer temperatures during the summers of 2023 and 2024.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the Illinois Department of Corrections.

legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Zepeda alleges that the summers of 2023 and 2024 produced a majority of days with heat indices from 90 to 115 degrees Fahrenheit. (Doc. 1 at 4, 7). He is an individual with chronic conditions, including sleep apnea, CHF[2], hypertension, and AFIB[3]. (*Id.* at 4). He alleges that his conditions make him vulnerable to the heat, and his vulnerability is exacerbated by medications that he takes, such as beta blockers and diabetes medication. (*Id.*). Zepeda alleges that on July 1, 2023, he wrote Defendant Mitchell a letter asking that he, as warden, ensure staff were following Department policies concerning heat related illness. He claims Mitchell ignored the correspondence and no heat illness prevention measures were taken. (Doc. 1 at 5).

Thus, on July 28, 2023, he wrote a grievance about the heat related issues. On the same day, he also showed Defendants Spencer and Harper a copy of the heat illness policy and asked them to leave his food port open for better ventilation, but they refused. (Doc. 1 at 5). Zepeda complains that around this time the prison installed a fan in the foyer area to keep staff cool but continued to neglect the impacts of heat on the inmates. Zepeda alleges in the complaint and in his grievance that ventilation systems were not functioning properly, and that they were caked with

---

[2] Zepeda does not define this abbreviation, but the Court interprets it to mean congestive heart failure. CHF is a long-term condition related to blood flow, and it can lead to fluids collecting in the lungs and legs. Cleveland Clinic, Congestive Heart Failure, https://my.clevelandclinic.org/health/diseases/17069-heart-failure-understanding-heart-failure, accessed on November 12, 2025.

[3] Zepeda does not define this abbreviation, but the Court interprets it to mean atrial fibrillation, which is a heart rhythm disorder that causes an irregular and rapid heartbeat Symptoms include fatigue, heart palpitations, trouble breathing, and dizziness. Cleveland Clinic, Atrial Fibrillation, https://my.clevelandclinic.org/health/diseases/16765-atrial-fibrillation-afib?utm_source=google_ppc&utm_medium=cpc&utm_campaign=Heart+-+Afib+-+General+-+Region+1,+2,+3,+4,+5,+6&utm_term=afib&utm_inv=y&utm_content=care&gclsrc=aw.ds&gad_source=1&gad_campaignid=16594632401&gclid=EAIaIQobChMIhZOV1ajtkAMV0NPCBB0a6RgfEAAYAiAAEgIs7vD_BwE, accessed on November 12, 2025.

dust, mold, and other harmful substances.  (Doc. 1 at 4, 6).  He faults Defendant Smith, a counselor, for providing a false response to the grievance wherein she stated air on the wing was moving.  He contrasts this statement with a later statement by the grievance officer that there was a work order from mid-June of 2023 to replace exhaust fans in a wing.  (Doc. 1 at 6).

On August 1, 2023, Zepeda wrote Defendant Hughes, the lieutenant governor, and other outside organizations about the conditions.  Among the issues raised in his letters, he claimed that the Department was not in compliance with 730 ILCS 5/3-7-2, which requires the provision of seasonally appropriate clothing.  (Doc. 1 at 6).  He contends that the only clothing provided to inmates were state blues, which are appropriate for winter weather and are stifling in the summer.  On August 22, 2023, Zepeda lodged a grievance about the clothing issue.  (Doc. 1 at 7).  He faults Defendants Mitchell and Smith for failing to provide relief in response to this grievance.

On September 1, 2024, Zepeda wrote a new grievance about the lack of adequate ventilation during periods of high heat.  (Doc. 1 at 7).  He complained that staff again had a fan in the foyer area, but inmates lacked adequate measures to stave off heat illness.  He faults Defendants Barwick and Smith for signing off on the response.  (Doc. 1 at 8).  Zepeda alleges that the conditions made it difficult for him to sleep, and he suffered from palpitations, dizziness, fainting, disorientation, and fear about his personal health, among other things.  (Doc. 1 at 8).  He claims that because he disclosed his chronic health issues in his grievances, and his heightened vulnerability to heat, defendants' actions amounted to a conscious decision to disregard his predicament.  He further explains that actions like refusing to follow the heat illness policy and refusing to leave food ports open amounted to an obvious disregard for safety with an intention of causing pain and emotional distress.  (Doc. 1 at 8).  He also alleges that failure to do routine maintenance on the ventilation system and forcing inmates to wear seasonally inappropriate

clothing are further evidence of a conscious disregard for inmate welfare. (Doc. 1 at 8, 10). Zepeda alleges that Defendant Hughes, the IDOC Director, is responsible for addressing issues raised in grievances as the final signatory on grievance appeals. (Doc. 1 at 10).

Zepeda included five enumerated claims for relief in his complaint. (Doc. 1 at 11). He seeks a declaratory judgment, injunctive relief mandating that Pinckneyville take specific measures during times of high heat index, and compensatory and punitive damages. (Doc. 1 at 12). In support of his complaint, he included a memorandum of law and copies of relevant grievances. (Doc. 1-1 at 1-34).

The Court will review the five enumerated claims exactly as they are set forth by Zepeda:

**Count 1:** **Monell claim against Defendants Hughes, Mitchell, and Barwick for failing to provide adequate policy and ensure the enforcement of the same at the expense of inmates' health and safety per cost cutting reasons (official misconduct);**

**Count 2:** **Eighth Amendment deliberate indifference claim against all defendants for failing to remedy dangerously hot conditions, poor ventilation, and layers of dust and mold in ventilation system;**

**Count 3:** **Equal protection claim against all Defendants for installing fans to protect staff while at work for 8 hours daily and for not installing fans on the wings as required by policy to help mitigate the heat for inmates in confinement for 24hrs a day in the dangerous heat;**

**Count 4:** **Eighth Amendment claim for not making accommodations for vulnerable inmates during extremely high heat indexes against all Defendants and intentional infliction of emotional distress; and**

**Count 5:** **Obstructions-falsification of state document to influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United, States against Defendant K. Smith.**

(Doc. 1 at 11).  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[4]

DISCUSSION

**Claim 1: *Monell* claim concerning policy for heat illness**

Plaintiff faults Defendants Hughes, Mitchell, and Barwick in their official capacities for the failure to properly implement the IDOC's heat illness policy during the summers of 2023 and 2024, he also seeks injunctive relief related to this policy.  As employees of the state, claims against Hughes, Mitchell, and Barwick are claims against the state itself, meaning Plaintiff cannot seek monetary compensation on these claims against these three defendants in official capacity.  *See e.g., Ames v. Randle*, 933 F.Supp.2d 1028, 1038 (N.D. Ill. Mar. 18, 2013) (explaining that suits against state officials in official capacity for money damages under § 1983 may not proceed); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' [subject to an action for damages] under § 1983.").  Plaintiff also seeks injunctive relief, which can be allowable under § 1983 against state officials in official capacity, but the facts of this lawsuit are about Pinckneyville, and Plaintiff's address at the time of filing this complaint was Centralia.  A prison transfer typically moots a claim about injunctive relief that is specific to a particular prison, unless there is a reasonable likelihood that Plaintiff will be returned to the prior prison soon.  *See e.g., Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (if a prisoner is transferred to another prison, his request for injunctive relief against officials at the first prison is moot unless he can demonstrate he is likely to be retransferred).  Here, Plaintiff

---

[4] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

has not suggested a re-transfer, so he cannot seek injunctive relief associated with Claim 1, and Claim 1 will be dismissed.

**Claim 2: Conditions of confinement against all defendant related to heat**

To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), *citing Farmer v. Brennan*, 511 U.S. 825, 824 (1994). Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.* Many of these conditions standing alone are not sufficient to give rise to an Eighth Amendment conditions of confinement claim, but they must also be considered collectively. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009).

Specifically in relation to temperature, courts have found that exposure to prolonged cold or prolonged heat can constitute a condition of confinement sufficient to invoke the Eighth Amendment. *See e.g., Dixon v. Godinez*, 114 F.3d 640 (7th Cir. 1997) (reversing a grant of summary judgment concerning prolonged exposure to cold); *Ames v. Randle*, 933 F.Supp.2d 1028, 1035 (N.D. Ill. Mar. 18, 2013) (allowing an inmate to proceed beyond a motion to dismiss on the allegation that he faced numerous conditions, including a lack of adequate ventilation that caused stifling high temperatures); *Phillips v. Reagal*, 2023 WL 5627993 (S.D. Ind. Aug. 31, 2023)

(collecting cases about extreme temperatures in prison and allowing an inmate to proceed against two prison employees related to extreme heat he faced while in segregation).

Zepeda alleges that he was subject to extreme heat for the majority of the summer months in 2023 and 2024, and that although the prison had a policy to prevent heat illness, the preventive measures were not implemented. The prison's failure to follow its own policy does not equate to a constitutional violation. However, courts have determined, especially at the earliest phases of a case, that the Eighth Amendment protects against extreme temperatures and/or the lack of adequate ventilation. Here, Zepeda alleges he suffered from extreme temperatures and a faulty and polluted ventilation system, which exacerbated his heat sensitivity related to chronic conditions. He also alleges that the situation was worsened by clothing that was meant for winter and made the situation unbearable. He says that he experienced physical ailments attributable to the prolonged heat exposure.

Zepeda alleges that he complained directly to Defendants Spencer and Harper about the conditions on a single day in the summer of 2023. He did not, however, allege that he presented Spencer or Harper with any specific concerns about his health or well-being on that day, nor does he claim they could observe any malaise. The allegation that Zepeda complained about the implementation of a hot weather policy to two prison employees on a single day, without alleging that he had any acute distress at that time, is not sufficient to hold them personally responsible for the conditions he experienced for two entire summers at Pinckneyville.

In addition to Spencer and Harper, Zepeda faults Defendants Mitchell, Barwick, and Smith for their responses to grievances and correspondence about the extreme heat and seasonally appropriate inmate clothing. Zepeda alleges that he contacted Mitchell via letter in early July of 2023 but got no response. He also lodged an emergency grievance about the conditions on July

28, 2023, which Mitchell denied emergency status. (Doc. 1-1 at 16). Ultimately, Zepeda filed two grievances in 2023 that he attached to the complaint, both which were signed off on by Defendant Mitchell. Zepeda alleges in the complaint that he complained about physical or medical distress in these grievances, but the attached grievances do not support this assertion. At most, in the August 22, 2023, grievance Zepeda said heat related illness "threatened his health," but he did not say anything about actual conditions or symptoms he experienced. (Doc. 1-1 at 20-21). Simply complaining to Mitchell that the prison's heat policies were not being followed, without indicating what sort of hardship was created by the situation, is not sufficient to support a plausible inference that Mitchell was deliberately indifferent to a condition causing harm to Zepeda.

Zepeda also complains in association with these two grievances that Defendant Smith, a counselor, provided false or incorrect information. Specifically, he complains that Smith stated air was flowing in response to his July grievance (Doc. 1-1 at 16), but the grievance officer indicated an order had been placed to replace fans (Doc. 1-1 at 18). The fact that maintenance was going to be performed is not proof that Smith intentionally misrepresented the situation, or even that what she said was untrue. Zepeda faults Smith in relation with his August 2023 grievance for simply re-iterating the dress code policy, but Smith is not liable merely by being an individual who participated in the grievance process if she did not cause an underlying harm. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the alleged mishandling of a grievance by a person who did not otherwise cause or participate in the underlying conduct states no claim). There is no indication that Smith set the dress code or had any control over it, so merely stating policy in a grievance response is not enough to hold her liable for the clothing situation or the related heat issues.

Zepeda also wrote a September 2024 grievance complaining that staff had extra ventilation in their work area, but inmates did not have adequate air circulation and were still being forced to wear hot clothing.  (Doc. 1-1 at 24-25).  Again, the grievance did not complain of any personal medical or physical impact from the heat.  In response, Smith and the grievance officer indicated that air was circulating on the wings and cell doors were already ventilated, so food ports did not need to be left open. (Doc. 1-1 at 26).  Zepeda faults Smith and Barwick as signatories.  (Doc. 1-1 at 7, 9).  As indicated in relation to the 2023 grievances, mere signatory status on a grievance is not enough to state a claim.  Zepeda argues in his memorandum of law that a prison official can be held liable for turning a blind eye to an issue presented in a grievance and failing to use their authority to intervene. (Doc. 1-1 at 4).  Zepeda accurately recites general principles from Seventh Circuit cases such as *Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015), but *Perez* also says that an official may become liable only if he or she "is alerted to an excessive risk to inmate safety or health through a prisoner's correspondence[.]" *Id.* at 782.  Here, although Zepeda argues that his grievances alerted Wardens Barwick and Mitchell to the heat issues, the grievances themselves do not reveal contents that suggest an "excessive risk to inmate safety or health."  Though he now claims in his complaint that he used the grievances to raise alarm about the impacts of heat on his chronic conditions and the side effects he experienced, the grievances themselves do not contain this message.  A warden reviewing an inmate grievance would understandably have a much different reaction to a grievance with general gripes about a hot summer as opposed to a grievance detailing how excessive heat was taking a serious toll on a particular inmate's health.  The Court finds that Zepeda's grievances attached to the complaint did not contain sufficient cautionary language to alert prison officials that he faced an extreme risk to his health.  Therefore, the Court

finds that Zepeda has failed to plead an adequate claim against Defendants Smith, Barwick, or Mitchell concerning their personal involvement in his complaints about the hot conditions.

This reasoning extends to Zepeda's assertion that Defendant Hughes should be held responsible for her role as the final reviewer of grievances or recipient of a single letter he alleges he sent. The grievance simply did not contain information sufficient to suggest to Hughes that there was an extreme risk that she needed to investigate and remediate. Zepeda does not explain the contents of the letter, so the Court cannot determine if it provided such a highly detailed account of an issue that it would immediately warrant any sort of response or that failure to respond would amount to deliberate indifference.

**Claim 3: Equal protection related to conditions for staff versus inmates**

Zepeda argues that his right to equal protection was violated because staff had extra fans or air conditioning in their foyer area, but inmates were not afforded better ventilation or fans during hot spells. To establish that he was discriminated against in violation of the Equal Protection Clause, a plaintiff must establish the following: 1) he "is a member of a protected class"; 2) he is "otherwise similarly situated to members of the unprotected class"; and 3) he "was treated differently from members of the unprotected class." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993) (*quoting McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir. 1989)). Zepeda does not allege anything in his complaint that suggests membership in a protected class, or differential treatment based on his membership in said class. The fact of incarceration does not confer protected class status. *Johnson v. Daley*, 339 F.3d 582, 585-86 (7th Cir. 2003) ("Prisoners are not a suspect class[.]").

Alternatively, an equal protection claim may be premised on the deprivation of a fundamental right. Fundamental rights for inmates include things like the right to access the courts

and to observe their religion.  *See e.g., Alston v. DeBruyn*, 13 F.3d 1036, 1040-41 (7th Cir. 1994) (inmates have a fundamental right to access the courts, and they maintain their right to observe their religion); *Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (discussing fundamental rights including the right to religious exercise, free speech not inconsistent with imprisonment, and access to the courts, but declining to extend the right of privacy to protect against random cell searches).  Here, the Court simply does not consider the problem that Zepeda has identified, unequal access to air conditioning or extra fans, as implicating a fundamental right.

Where disparate treatment is not based on a suspect class and does not affect a fundamental right, prison administrators may treat inmates differently as long as the unequal treatment is rationally related to a legitimate penological interest. *See City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439–42 (1985); *Johnson v. Daley*, 339 F.3d 582, 585–86 (7th Cir. 2003) (en banc).  There are many legitimate reasons why conditions in the staff area may differ from the conditions for inmates, and thus the difference in climate control from a staff area to an inmate area does not amount to a deprivation of equal protection.

**Claim 4: Failure to accommodate vulnerable inmates and intentional infliction of emotional distress**

To the extent that Claim 4 again complains of the hot temperatures as a condition of confinement, the analysis for Claim 2 adequately explains why this claim is not yet adequately pled.  If Zepeda intended to plead some sort of Americans with Disabilities Act claim, he has not provided sufficient allegations to sustain such a claim.  Finally, as to the alleged intentional infliction of emotional distress, the Court will not exercise supplemental jurisdiction over this claim where all other federal claims are dismissed.  Additionally, given that the Court does not even find the complaint sufficient to hold the individual defendants liable for intentionally

disregarding a serious risk to inmate health, there is no basis to find these same defendants intentionally inflicted emotional distress. Thus, Claim 4 is dismissed in full as inadequately pled.

**Claim 5: Obstruction or falsification of documents by Defendant K. Smith**

Zepeda alleges that Defendant Smith violated 18 U.S.C. §1519, a provision that criminalizes the falsification of records and documents within a department or agency of the United States. Section 1519 does not provide a valid basis for a claim because Zepeda alleges that Defendant Smith acted as an employee of the state, so her conduct does not fall within the scope of this criminal statute. Additionally, private individuals do not have authority to initiate criminal prosecutions for violations of federal law, so Zepeda cannot proceed on Claim 5.

For all of the foregoing reasons, the Court finds that Zepeda's complaint is insufficient in present form to proceed on any of the claims against any defendants. It is not entirely implausible that Zepeda could plead a valid claim related to the conditions he describes, so he will be given leave to amend. Zepeda will have 30 days from the date of this Order to file an Amended Complaint. The Amended Complaint will completely replace the earlier complaints. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). Failure to submit an amended complaint on time could result in the dismissal of this entire lawsuit for failure to state a claim or failure to prosecute. FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1056-57 (7th Cir. 1997) (dismissal is allowed for failure to comply with a court order); 28 U.S.C. § 1915A.

**DISPOSITION**

Zepeda is **DIRECTED** to file an Amended Complaint within 30 days of this Order.  To assist him with preparing an amended complaint, the Clerk of Court is directed to mail Zepeda a copy of the standard civil rights complaint form along with this Order.  If Zepeda fails to file an amended complaint, his case may be dismissed for failure to state a claim or failure to prosecute.

**IT IS SO ORDERED.**

Dated: November 14, 2025

*s/ Reona J. Daly*
**Reona J. Daly**
**United States Magistrate Judge**
