In The United States District Court
Southern District of Illinois

Francisco Zepeda, pro se
    Plaintiff

    v.

LeToya Hughes, David Mitchell,
John Berwick, Sgt Spencer,
Sgt. Harper, K. Smith, et. al.,
    Defendents

Case 3:25-cv-01825-RJD

First Amended Complaint

I  Jurisdiction

1. This is a civil complaint authorized by 42 U.S.C. §1983 to redress the deprivation under color of state law, of rights secured by the Constitution of the United States. This Court has Jurisdiction under 28 U.S.C. §§ 1331 and 1343 (a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. The Southern District of Illinois is an appropriate venue under 28 U.S.C §1391 (b)(2) because it is where the events giving rise to this complaint occured.

II  Plaintiff

3. Plaintiff is and was at all times mentioned herein a prisoner of the state of Illinois and in the custody of the Illinois Department of Corrections. He is currently confined at Centralia C.C. located at 9330 Shettuc Road Centralia, Illinois 62801.

III    Defendants

4. Defendant LeToya Hughes is or was employed as Director of the Illinois Dept. of Corrections located at 1301 Concordia Court Springfield, Illinois 62794. Defendant Hughes has policy making authority and has a duty to ensure all state laws, statutes and IDOC Policy are followed. She is being sued in her professional Capacity under Monell Claim for breach of those duties and in her personal Capacity for ignoring reports of Constitution deprivations made known to her through Correspondences and grievances, allowing wanton infliction of pain and suffering from Conditions of Confinement (excessive heat, poor/no ventilation) without taking any steps to mitigate risk or offer any relief. Aiding and abetting violation of Illinois Statute see Argument Twelve

5. Defendant David Mitchell was employed as Warden of Illinois State prison Pinckneyville C.C. located at 5835 State Route 154 Pinckneyville, Illinois 62274. Defendant Mitchell has policy making authority and a duty to ensure all state laws, statutes, and IDOC Policy are followed. He is being sued in his professional Capacity under a Monell Claim for breach of those duties and in his personal Capacity for ignoring reports of Constitutional deprivations made known to him through Correspondences and grievances, allowing a wanton infliction of pain, suffering and emotional distress from Conditions of Confinement (excessive heat, poor/no ventilation) without taking any steps to mitigate risks or offer any relief. Aiding and abetting violation of IL Statute see Argument Twelve

2.

6. Defendant John Borwick is or was employed as warden of Illinois State Prison Pinckneyville C.C. located at 5835 State Route 154 Pinckneyville, Illinois 62274. Defendant Mitchell has policy making authority and a duty to ensure all state laws, statutes, and IDOC policy are followed. He is being sued in his official capacity under Monell claim for breach of those duties and in his personal capacity for ignoring reports of Constitutional deprivations made known to him through correspondences and grievances, allowing a wanton infliction of pain and suffering and emotional distress from Conditions of Confinement (excessive heat, poor/no ventilation) without taking any steps to mitigate risks or offer any relief. Aiding and abetting violation of Illinois Statute. See Argument Twelve

7. Defendant Sgt. Spencer, is or was employed as a Correctional Seargent for Illinois State Prison Pinckneyville C.C. located at 5835 State Route 154 Pinckneyville, Illinois 62274. She is being sued in her personal capacity for ignoring reports of violation of Heat Related Illnesses policy (leaving food latches open for air flow in cell) which lead to Constitutional deprivations from Conditions of Confinement (excessive heat, poor/no ventilation) See Four (e) Aiding and abetting violation of IDOC Policy. See Argument Twelve

8. Defendant Sgt. Harper is or was employed as a Correctional Seargent for Illinois State Prison Pinckneyville C.C. located at 5835 State Route 154 Pinckneyville, Illinois 62274. She is being sued in her personal capacity for ignoring reports of violations of Heat Related Illness Policy (leaving food latches open for air flow in cell) which lead to Constitutional deprivation from Conditions of Confinement (excessive heat, poor/no ventilation) allowing a Wanton infliction of pain and suffering and emotional distress. See Four (e)

3.

9 Defendant K. Smith is or was employed as a Correctional Counselor for Illinois State Prison Pinckneyville C.C. located at 5835 State Route 154 Pinckneyville, Illinois 62274. She is being sued in her personal capacity for her professional misconduct of providing false information on a state document (grievance), failing to perform her duty as an inmate advocate by not fully investing plaintiff's complaint of a constitutional violations allowing for a wanton infliction of pain and suffering and emotional distress. See argument Four, Five, Seven, Eight, Nine, Ten and Eleven, Twelve

IV. Previous Law Suits

10   22-CU-01386-RJD  Pending filed 6/8/22
     22-cu-3040-GCS  Pending filed 12/22/22
     24-CV-0818-MAB  Pending filed 3/20/24
     24-CV-2455-GCS  Pending filed 11/08/24

V. Grievance Procedure

11. Plaintiff has exhausted all administrative remedies available to him as required

4.

VI.    Facts

12.    Summer of 2023 plaintiff was a 50yr old Male with Chronic heat Sensitive Medical conditions (Congestive heart failure, Hypertension, Sleep apnea, and Atrial Fibrillation). Plaintiff utilizes Cardizem, Losarten, Imbur, Hydralazine, Coreg, aspirin and lasix to treat. The Summer of 2023 produced a majority of days consisting of dangerously high heat indices ranging from approximately 90° – 115° farenheit, which there is a reasonable likelihood that a reasonable minded person would understand those heat indices would produce wanted and unnecessary pain and suffering without proper means to remediate the exposure and risk. See argument Seven. These risks are heightened by the above medications (Beta blockers and diuretics), poor and at times no ventillation in the cell where plaintiff was held for approximately 22 hrs a day. See argument Six. All defendants were personally aware of these risks and ignored them.

If and or when the vents in the cell were on they have a thick layer of dust and mold accumulated in them. There is a reasonable likelihood that the thick layer preventies the ventillation system from working optimely to provide designed relief. The lack of preventive maintence could be seen as a method to cut cost at risk of health and safely of inmates. See argument Eighth(b) In Ball v. LeBlanc, 792 F.3d 584 (5th Cir. 2015 found that death row inmates rights were violated by exposure to high heat indexes, and poor ventillation without efforts to to mitigate risk from heat. See Argument Six

5.

13 The Illinois Department of Corrections - Agency Medical Director issued a prevention of Heat related Illnesses policy, that a reasonable inference could be drawn that it was expected to Not only provide expected and needed relief from the heat but that if followed would provide Minimal measure of life's Neccessity from exposure and that the failure to do so would be harmful.

On 7/1/25 plaintiff wrote to defendant mitchell requesting that he ensure staff followed the Prevention of Heat Related Illnesses Policy. Defendant Mitchell made a decision Not to respond or take any steps to follow the policy or any other remenediation steps. See argument Nine. The Course of discovery could reveel that defendents purposely, Knowingly and recklessly Created Conditions that were objectively unreasonable.

The prevention of Heat related Illnesses Policy requires, among other thing, that ice be passed out twice per day, food latches open from morning till Night fall, ventillation system is working properly, fans are on the wings. Defendent Mitchell refused to ensure complience with this policy leaving plaintiff to Suffer, See Argument five,

14 On July 28, 2023 plaintiff wrote grievance 2441-07-23 outlining Defendant Mitchell failing to exercise his authority to ensure compliance with the Prevention of heat related Illnesses Policy and how on 7/27/23 Sgt Spencer was shown the Prevention of Heat related Illness Policy and specifically asked to leave the food latches open for air circulation, per policy, and she refused. It points out on 7/28/25 Sgt Harper was shown a copy of the Policy and also refused to leave food latches open for air circulation. The grievance points out how the heat was so severe that JDOC chose to install fans in the foyer areas where staff were, but failed to install any fans on the wings which was actually required per the prevention of Heat related Illnesses Policy. It could be seen as reasonable that JDOC installing fans in the housing units were staff were, is an acknowlegment of the risk to their health and non compliance with its own policy to install or have fans on the wings, was a conscious disregard to inmates health and safety. See Argument Four (e).

Defendant K. Smith's response to the above grievance provided false and misleading information stating that Maintenance states ventillation is working and fans are operable. When in fact Maintenance later responds on the same grievance that funds to replace the ventillation fans have been submitted. See Argument Four and Ten. Defendant

On 11/17/23 Defendant Hughes agreed with the inaction of following Prevention of Heat Related Illnesses Policy and

7

Not to use her authority to ensure IDOC's Policy was followed See Arguement Four, and Arguement Two.

15   On 8/1/23 Pleintiff wrote to Defendent Hughes Concerning Violation of 730 ILCS 5/3-7-2 and Prevention of Heat Related Illnesses Policy. The Correspondence pointed out how 730 ILCS 5/3-7-2 Stipulates that inmates are to be provided Seasonal Clothing and how inmates only had winter clothing which they are forced to wear in the hot Summer Months, and how inmates are not permitted to wear cooler clothing purchased from Commissary when going to chow (one of the hottest places) or other places inside the institution. It also pointed out how IDOC was ignoring its own policy (Prevention of Heat Related Illnesses). This Correspondence could be seen as sufficient to alert Defendent Hughes of the dangers of excessive heat and some Measures that could have been done and that were required to be done to provide the Minimal Measures of life's Necessities. She Ignored pleintiff's Correspondence, See Arguement Two, Four(e), Five, Seven, Eight, and Nine.

The above Correspondence was also sent to LT. Governer, ACIU of Illinois, Equip for Equality, Prison Legal News, Uptown Peoples Law Center and John Howard Association.

8

16  ON 8/22/23 Plaintiff wrote grievance 2771-08-23 outlining How JDoc/Pinckneyville C.C. is in violation of 730 ILCS 5/3-7-2 by not providing Seasonal clothing, ie Summer clothing, and how inmates are forced to wear winter clothing in the Summer heat with high heat indexes. Defendent K. Smith responsed to grievance by quoting the orientation Manuel, and failing to address violation of 730 ILCS 5/3-7-2 which it could be assumed was written to provide the Minimal civilized Measure of life's Necessity. Defendant Mitchell Signed off on the grievance without addressing the Statute Violation or What measures were being taken to protect Inmates from the heat, See Arguement Two, Four, Five, Seven, and Nine

ON 1/26/24 Defendant Hughes Agreed with the Warden Mitchell lack of response and chose Not address how the Statute was not being followed. Defendant Hughes has policy Making authority and could have created policy to follow 730 ILCS 5/3-7-2 to ensure Compliance with it was understood and expected. See Arguements Two, Four, Five, Seven and Nine

17  ON 06/29/24 Plaintiff wrote to Defendent Barwick pointing out how Pinckneyville was Not taking any Measures to Mitigate the heat including not following its own Prevention of Heat related Illnesses Policy or 730 ILCS 5/3-7-2 (Seasonal clothing) and how plaintiff tried to address the Same issue in grievance 2441-07-23 Plaintiff received No response to this Correspondence, See Arguement Two, Four, Five, Seven and Nine

9

18. On 6/30/24 Plaintiff mailed the same correspondence to Defendant Hughes, U.S. Dept of Justice - Civil Rights Division, and Governer Pritzker. Defendant Hughes did not respond or take any action.

19. On July 14, 2024 responded to letter letter to Governer Pritzker, Goca Case #1243 which failed to address the violation of the Prevention of Heat related Illnesses Policy or lack of Seasonal Clothing per 730 ILCS 513-7-2. Defendant Berwick provided no restriction from the heat. See Argument Two, Four, Five, Seven, and Nine

20. On 7/31/24 Plaintiff wrote to Defendent Berwick and Governer Pritzker outlining how Defendent Berwicks July 14, 2024 response inadequetly addressed the issues of violation of policy meant to offer mitigation from the heat. Plaintiff did not receive a response from either party. See Argument Two, Four, Five, Seven and Nine.

21. On 9/1/24 Plaintiff wrote grievence KSS-0924-3183 outlining the dangerously high heat indices and continued violation of policy designed to offer mitigation from the heat, or any steps to do so. It is also outlined how for a second year in a row IDoc/ Pinckneyville found it necessary to install a second fan in the small foyer area to protect staff from the heat and failed to provide fans for inmates protection. This could be liberally be construed of their knowledge and expectation of heat risks and failure to provide these measures to inmates.

10.

It also outlined how plaintiff addressed these issues in grievances 2241-07-23 and 277-08-23. The response was essentially that the air is flowing on the wing and that is good enough. Defendant Berwick signed off on this grievance as being properly addressed.

It should be noted that the Prevention of Heat Related Illnesses Policy is sent to each Institution and has requirements specific to them. So the requirement for food latches to be open was meant for Pinckneyville C.C. Even if were not, opening the feed latches provided more air flow during feeding in the cell times and was brought to the attention of defendants and should have been utilized in the least to offer some protection and relief

On 1/16/25 Defendant Hughes signed off on the responses to this grievance (0924-3183) and failed to ensure Policy was followed and inmates were protected. See Arguments Two, Four, Five, Seven and Nine

VII  Legal Claims

22   Count 1: Monell Claim against Defendants Hughes, Mitchell and Berwick for failing to provide adequate policy and ensure the enforcement of the same at the expense of inmate's health and safety per cost cutting reasons (Official Misconduct)

11

23  Count 2: Eighth Amendment deliberate indifference claim against all defendants for failing to remedy dangerously hot conditions, poor ventilation, and layers of dust and mold in ventilation system

24  Count 3: Eighth Amendment claim for not making accomodations for vulnerable inmates during extremely high heat indexes against all defendants and intentional infliction of emotional distress; and aiding and abetting violation of Illinois statute

25  Obstruction - falsification of state document to influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States against K. Smith.

VIII  Prayer for Relief

Wherefore, Plaintiff respectfully pray that this Court enter Judgment:

26  Granting Plaintiff a declaration that the acts and omissions described herein violate his rights under the United States Constitution and laws of the United States and

27  Granting plaintiff compensatory and punitive damages against each defendant Jointly and severally

28  Plaintiff Seeks recovery of the Costs in this suit and any additional relief this Court deens Just proper and equitable

IX  Jury Demand

29  Plaintiff Seeks a Jury trial on all issues triable by a Jury

Declaration Under Fed. R. Civ. P.

I Certify that to the best of my knowledge information and belief, this complaint is in full compliance with Rule 11(a) and (b) of the Fed. R. Civ. P. The undersigned also recognizes that failure to comply with Rule 11 May result in Sanctions

Dated: _____

12.

IN The UNited States District Court
For The Southern District of Illinois

Francisca Zepeda, pro se
        Plaintiff

        v,

LaTaya Hughes, etal.,
        Defendents

Case No. 3:25-cv-01825-RJD
1983 Civil Complaint
State Prisoner

Memorandum OF Law

Arguements:
1-11

## Arguement one

a) Pro se pleadings should be held to less stringent standerds than those prepared by Counsol. Heines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L. Ed 2d 652 (1972).

b) Under Rule 8(a)(2) of the Fed. R. Civ. P., a complaint must contain, "a short and plain statement of the claim showing that the pleeder is entitled to relief".

c) To Survive a motion to dismiss, the complaint must, "State a claim of relief that is plausible on its face." Roberts v. City of Chicago, 817 F. 3d 561, 564 (7th Cir. 2016).

d) "a claim is facielly plausible, when the plaintiff pleads factual content that allows the Court to draw reasonable inference that the defendant is liable for the misconduct alleged." Ash Croft v. Iqbel, 566 U.S. 622, 678 (2009).

e) The acceptable Rule appraising the Sufficiency of the complaint is that it "Should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S 41, 45-46, 78 S.Ct. 99, 101-02 L. Ed. 80 (1957)

f) We read the pleadings of a pro se plaintiff liberally and interpret them to raise the strongest arguements that they suggest. Burgos v Hopkins. 14 F. 3d 787, 790 (2d Cr 1994).

Argument Two

a) There are at least three type of Municipal actions that May give rise to municipal liability under § 1983, (1) an expressed policy that caused Constitutional deprivation when enforced (2) a wide spread practice that is So permanent and well Settled that it constitutes a custom or practice and (3) an allegation that the Constitutional injury was caused by a person with final policy Making authority. Spiegal v. McClintic, 916 F. 3d 611, 617 (7th Cir. 2019).

b) Inaction can give rise to Municipal liability under § 1983 in Some instances if it reflects a conscience decision to Not take action. In Some cases the risk of Constitutional Consequences from municipal policy Can be so patertely obvious that a municipality Can be liable under § 1983 without proof of pre-existing patterns of violation. Connick v. Thompson, 563 U.S. 51, 64 (2011); accord J.K.J, 960 F 3d at 380-81; Glisson, 849 F.3d at 382.

Argument Three

a) Under the doctrine of continuing violation, "everyday that prolonged his agony by Not treating his painful condition Marked a fresh infliction of punishment that Caused the Statute of limitations to Start running anew. Heard v. Wexford Health Sources, Inc., Not reported in F. Supp 2d (2011).

b) A Serious wrongful Act Creates a Serious claim. A violation is Called Continuing Signifying that a plaintiff can reach back to its beginning, even if that beginning lies outside the Statutory limitation period, when it would be unreasonable to require or even permit him from suing Seperately over every incident of the defendant's unlawful Conduct. Heard v. Wexford Health Sources, Inc., Not reported in F. Supp. (2011).

C) Thus under the doctrine of continuing violation," deliberate indifference ...is a continuing violation that occurs when the defendants have Notice ... and ends only when treatment is provided or an inmate is released, Heard v. Wexford Health Sources, INC., Not reported in F. Sgp 2d (2011).

## Argument Four

a) Those who review grievances May be liable for Constitutional deprivations for which they bear No personal responsibility when the grievance provides the required Notice and the reviewing official Nonetheless fails to exercise their authority to intervene on an inmates behalf and rectify the situation, Perez v. Fengollo, 792 F. 3d 768, 782 (7th Cir. 2015). Even if plaintiff lacks evidence that a reviewing official read and received the grievance at issue, the Court may infer a reviewing officials actual Knowledge of the Situation outlined in a grievance based on the Number of grievances filed and the officials Systematic ignoring of request for redress, Gentry v. Duckworth, 657 F. 3d 555, 561 (7th Cir. 1995).

b) Though a Warden May delegate the responsibility to review grievances to Subordinates, if a Warden "simply has a policy of Not reading complaints from prisoners, it could be considered intentional ignorance, which carries the same consequences of actual Knowledge." Birch v. Jones No. 02-CV-2094, 2004 WL 212 5410, at *7 (N.D. Ill. Sept 22, 2604).

c) Through plaintiff's grievances Defendants had actual knowledge of plaintiff's serious Medical Conditions and that the failure to follow established policy was exacerbating his chronic illnesses. The Made a conscious decision to do Nothing. They failed to exercise their authority to rectify the situation and turned a blind eye to unconstitutional Conditions. Gentry, 65 F. 3d at 561

d) (The Eighth Amendment was violated when prisoners who were being treated for Hypertension and diabetes were held in very hot cells without sufficient access to heat-relief measures) Ball v. LeBlanc, 742 F.3d 584, 592 (5th Cir. 2015); Webb v. Livingston, 618 Fed. Appx. 201, 208-09 (5th Cir. 2015) (inmates with heat-sensitive medical conditions who were housed in cells where the temperatures exceeded 100 degrees has asserted facts that, if proven, would overcome qualified immunity).

e) If persons who are able to take steps to remediate heat fail to adequately do so, they may be found to be deliberately indifferent to a prisoner's welfare. See. Phillips, 2023 WL 5627993, at *9 (denying summary judgment to prison officials who claimed they adequately addressed extreme heat in cell block through additional fans in the block, regular temperature checks of prisoners, and provision of some additional ice to prisoners, where there is evidence more could have been done).

5.

5) The grievance and response are thus sufficient to create a triable issue of fact on deliberate indifference. See Vance v. Peters, 97 F. 3d 987, 993 (7th Cir. 1996)

Evidence that the Warden "Must have known" about the risk of physical or psychological harm... is sufficient for a Jury to find deliberate indifference. Sanville v. McCaughtry, 266 F. 3d 724, 737 (7th Cir. 2001), Citing Farmer (511 U.S. at 842-43, 114 S. Ct. 1970).

6

Argument Five

a) Under Illinois law, the element of the tort of Intentional infliction of emotional distress are as follows: 1) extreme and outragous conduct by the defendants; 2) intent to cause, or reckless disregard of the probability of causing emotional distress; 3) severe or extreme emotional distress suffered by the plaintiff; and 4) actual and proximate causation of the emotional distress by defendants outragous conduct. Harmos v. Bethany Homes and Methodist Hosp. of Chicago, 849 F. Supp. 1176, 1180 (N.D. Ill. 1995).

b) The affirmative duty to protect arises not from the State's knowledge of the individual predictament or from its expression intent to help him, but from the limitation which has been imposed on his freedom to act on his own behalf, at 200, 109 S. Ct. 998.

c) Deliberately exposing prisoners to dangerous heat indexes, without proper means to mitigate those heat indexes, a jury could find that the exposure was intentional and for the very purpose of inflicting severe physical and mental pain and suffering and that the defendants deliberate indifference to the corplaints of and risks to the plaintiff meets not only the standards of Intentional Infliction of emotional distress, but also that of torture.

d) 18 U.S.C. § 2340 (1) "Torture" means an act committed by a person acting under color of law specifically intended to inflict severe physical or mental pain or suffering (other then pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control

7

e). The Illinois Supreme Court has identified three non-exclusive factors that inform whether conduct is extreme and outragous. McGrath, 127 Ill. Dec. 724, 533 N.E. 2d at 809-10. First, the extreme and outragous nature of the conduct may arise from defendant's "abuse of some position that gives him authority over the plaintiff or the power to affect the plaintiff's interests." Schweihs, 412 Ill. Dec. 882, 77 N.E. 3d at 63. Second, Courts consider the reasonableness of a defendant's belief that his objective is legitimate. McGrath, 127 Ill. Dec. 724, 533 N.E. 2d at 811. Third, Courts evaluate whether the defendant is aware that the plaintiff is particulerly susceptable to emotional distress. Koleges v. Heftel Board, Corp., 154 Ill. 2d 1, 180 Ill. Dec. 307, 607 N.E. 2d 201, 211 (1992). These factors are "to be considered in light of all of the facts and circumstences in a perticuler Case, and the presence or absence of any of those factors is not necessarily Critical to the cause of action for intential infliction of emotional distress." Schweihs, 412 Ill. Dec. 882, 77 N.E 3d at 63.

## Argument Six

a) Dr. Susi Vasallo, the plaintiff's expect, testified that peer reviewed scientific articles measured the correlation between heat index and morbidity and mortality. This Court has also relied on the heat index before. See Gates, 376 F.3d at 339 (upholding increased access to ice water, and shower when the heat index exceeds 90° F). Ball v. LeBlanc, 792 F.3d 584 (5th Cir. 2015).

b) According to Dr. Vassallo, the Cardiovascular System is central for maintaining Normal body temperature. Dr. Vassallo testified that both hypertension and diabetes can adversely affect this Critical System, "the heart has to be able to pump very hard to meet the demands of heat". Hypertension generally can decrease "the ability of the blood vessels to open and close." As a result, those are "not compliant as they should be", "they can't open like they should and have to in response to heat", and blood therefore cannot circulate to cool the body. Therefore, people with hypertension generally can have a hard time controlling their body temperatures. The same is true for people with diabetes. Cardiovascular disease, which can result from diabetes, can harden the arteries and blood vessels, thus inhibiting circulation. As a result, diabetics can loose ability to circulate blood properly and thus the ability to maintain Normal body temperatures. Ball v. Le Blanc, 792 F.3d 584 (5th Cir. 2015)

c) Treatment for hypertension can further inhibit these prisoners ability to regulate body temperature. Specifically Beta blockers, which help control blood pressure, can compound the effects hypertension has on the Cardio Vascular System. Beta blockers prevent blood vessels from dilating properly while at the same time, "decrease the hearts ability

to pump as hard and meet its requirements of harder exercise, likewise, diuretics decrease the total amount of water and salt in the body, resulting in less fluid around which the heart can contract. According to Dr, Vassallo, without sufficient fluid to contract, the heart is unable to meet the increased demands heat places on the cardiovascular system. Therefore, even if prisoners receive proper care for those ailments, they may be at increased risk for heat stroke. Ball v. LeBlanc, 792 F. 3d 584 (5th Cir 2015).

d) To prove unconstitutional prison conditions, inmates need not show that death or serious injury has already occured. See Helling, 509 U.S. at 33, 113 S Ct. at 2481 ("that the Eighth Amendment protects against future harm to inmate's is not a novel proposition.") They need only show that there is a "substantial risk of serious harm." Gates, 376 F. 3d at 333

e) Further, Dr. Vassallo provided a reasonable explanation for the lack of past harm to these plaintiff's: "heat stoke is a failure of thermoregulation which is dramatic and catastrophic. It occurs suddenly ... People can suffer suddenly from heat stoke without ever having complained about the weather. Ball v. LeBlanc, 792 F. 3d 584 (5th Cir. 2015)

9.

f) The risk of serious harm due to exposure to conditions of extreme heat significantly increase when an individual is exposed to heat indices of 88 degrees or greater. Dr. Vassello testified that according to the findings of a recent study published in February 2016, "hospitalizations due to heat-related illnesses take a rather abrupt increase at the mean heat index ... of 32 degrees Celsius." Thirty two degrees Celsius equates to 89.6 degrees Fahrenheit. Dr. Vassello concluded that the "Number 88 degrees is reasonable and scientifically ... Substantiated number" as a benchmark for the heat index at which individuals are subjected to a substantial risk of serious harm due to heat related illnesses, Ball v. LeBlanc, 223 F. Supp 3d 529 (M.D. La 2016)

g) Some heat related disorders include "heat syncope (fainting), heat cramps, heat stroke can manifest in similar ways, including through light headedness, thirst, nausea, weakness, fainting, irregular heart beat, and abdominal cramps, because heat exhaustion can procede heat stroke. Heat stoke can occur rapidly without warning. In fact two-thirds of victims "experience symptoms for less than one day before being hospitilized or being found dead." Victims may also be physically or mentally incapable of calling for help as heat stroke can lead to feelings of confusion and alter the afflicted mental status, according Dr. Vassello, a licensed physician and an expert on thermoregulation. Voice of the Experienced V, LeBlanc, Civil Action 23-01304-BAJ-EWD (M.D. La, July 02, 2024)

## Arguement Seven

a) Eighth Amendment protects inmates not only from deliberate indifference to his or her current serious health problems, but also from deliberate indifference to conditions posing unnecessary risk of serious damage to future health. Roe v. Elyea, 631 7. 3d 843 (2011).

b) We have repeatedly upheld District Court findings that heat levels within these prisons violate the Eighth Amendment, and we have done so in the context of class action in at least one case. Yates v. Collier, 868 7. 3d 354 (2017).

c) It is well established in our Circuit "that the Eighth Amendment guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures", Hinojose v. Livingston, 807 7. 3d 657, 669 (5th Cir. 2015).

d) We have repeatedly recognized the serious risk of harm that excessive heat can pose in the prison context absent adequate mitigating measures, and we have consistently found evidence sufficient in these cases to support an Eighth Amendment violation, even when certain mitigating measures were available. Yates, 868 7. 3d 354 (2017).

e) District Court found based on the expert testimony, that heat mitigation measures -- more frequent showers, cold drinking water, fans and temporary access to air conditioned "respite areas" -- were ineffective to reduce the risk of serious harm to a constitutionally permissible level for an inmate, including healthy inmates. Yates 868 7. 3d 354 (2017)

Argument Eight

a) The Eighth Amendment prohibits "Cruel and unusual punishment" U.S. Const. Amend. VIII. A condition of confinement may constitute cruel and unusual punishment, if the condition results in "questionable and serious deprivations of basic human needs", or it "deprives inmates of the minimal civilized measures of life's Necessities". Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

b) Extreme temperatures and inadequate ventilation inside a prison can violate the Eighth Amend. See. Walker v. Schult, 717 F. 3d 119, 126 (2nd Cir. 2013), ("it is well settled that exposing prisoners to extreme temperatures without adequate ventilation may violate the Eighth Amendment.") White v. Monohan, 326 F. Appx 385, 387 (7th Cir. 2009).

c) Prison officials violate the Eighth Amendment when "they are deliberately indifferent to adverse conditions that deny' the minimal civilized measures of life's Necessities' such as adequate food, clothing, shelter, recreation and medical care." Budd v. Motely, 711 F. 3d 840, 842 (7th Cir. 2013).

d) (inmates heightened vulnerability to high temperatures coupled with high summer temperatures in inmates housing, posed a substantial risk of serious harm); Gates, 376 F. 3d at 340 (determining that exposure to consistently hot temperatures constituted a substantial risk of serious harm to inmates); Smith v. Sullivan, 553 F. 2d 373, 381 (5th Cir. 1977) (stating that if the proof shows occurance of extreme temperatures, that are likely to be injurous to inmates health, relief should be granted).

Arguement NINE

a) The Francis Understood that cruel and unusual punishment can be administered by the failure of those in charge to give heed to the impact of their actions on those within their care. Jordan v. Garner, 986 F. 2d 1521, 1544 (C.A. 1993)

b) Prisoners requests that fell on deaf ears may evidence deliberate indifference. Dixon, 114 F. 3d at 645

c) Deliberate indifference is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 62 USLW 446.

d) A prison official is deliberately indifferent when he knows or should have known of a sufficient serious danger to an inmate. The civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiable high risk of harm that is either known or so obvious that it should be known. Presser and Keeton § 34, pp 213-214

e) Whether prison officials had requisite knowledge of Substantial risk, so as to have a duty to protect prisoners from harm, is a question of fact subject to demonstration in usual ways, including inference from circumstantial evidence. Farmer, 511 U.S.

f) "It is safe to affirm that punshments of torture ... and all other in the Sare line of unnecessary cruelty, are forbidden by that amendment..." In re Kemmler, 136 U.S. 436, 477, 10 S. Ct. 930, 933, 34 L. Ed. 519 (1990).

G) "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequence of not adopting a policy will be a deprivation of constitutional rights". Porter, b55 F. 3d at 466

h.) If the Warden were aware of "a Systematic lapse in enforcement" of a policy Critical to ensuring inmates safety, his failure to enforce the policy" could Violate the Eighth Amendment. Gora v. Bobbitt, 862 F. 2d 646, 652 (7th Cir. 2024)

Institutional liability "can be proven in a number of ways, including but not limited to repeated actions. A Single memo or decision Showing that the choice Not to act is deliberate" May establish liability under Monell. Glisson, 849 F. 3d at 381. "There is No Magic Number of Injuries that must occur before defendant's failure to act can be Considered deliberately indifferent," Howell, 987 F. 3d 647, 653 (7th Cir. 2021).

## Argument Ten

a. " The most Natural grammatic reading of the statute is that the term 'Knowingly' in §1519 modifies only the surrounding verbs: Alters, destroys, mutilates, conceals, covers up, falsifies, or makes false entry." United States v. Yeilding, 657 F.3d 688, 714 (8th Cir, 2011). The term "knowingly" adds no requirement to the Jurisdictional language later in §1519. It is enough for defendant to intend to obstruct an investigation, and on an unrelated Note, for the investigation to be within federal Jurisdiction. U.S. v. Sheffler, 23-1557 (7th Cir, Jan 08, 2025).

b. This lines up with the usual understanding of Jurisdictional elements, which typically lacks mens rea requirement. See United States v. Feola, 420 U.S. 671, 677 N. 9 (1975) ("The existence of the fact that confers federal Jurisdiction Need Not be one in Mind of the actor at the time he perpetrates the act Made criminal by the federal statute"); United States v. Ringer, 300 F.3d 788, 791 (7th Cir, 2002) (under 18 U.S.C. §1001, "Made Knowingly and Willingly" and "Concerned a Matter within the federal department or agency" are independent elements) See also United States v. Cooper, 482 F.3d 658, 664-65 (4th Cir, 2007) ("it is well settled that Mens rea requirements typically do not extend to the Jurisdictional elements of a crime") United States v Camps, 529 F.3d 980, 1006 (11th Cir, 2008) ("No proof of Mens rea is Necessary for elements that are 'Jurisdictional only'"

15.

c. ("To Sustain a conviction under § 1519, it is enough for the government to prove that the defendant intended to obstruct the investigation of any matter as long as that matter falls within the jurisdiction of a federal department or agency.") United States v. Gray, 692 F.3d 514, 519 (6th Cir. 2012)

d. Consider that Sheffler's incident report was written on an official Department of Corrections form, which was reviewed by Supervisors and kept in the regular course of business. A false report therefore would be preserved for any potential investigation, including a federal one. Further, Illinois Staff are expected to uphold the Const. of the United States. This placed Sheffler on Notice that civil rights violations could be investigated. Sheffler, 23-1557 (7th Cir. Jon 08, 2025).

Courts have held that the Eighth Amendment may be violated when prison officials provide inadequate clothing to inmates... Knop v. Johnson 977 F.2d 996, 1012-31 (6th Cir. 1992) or when prison officials provide inmates with clothing that is "potentially insufficient to protect them"... Bell v. Idaho St. Bd. of Corrections, 595 F. Supp. 1558, 1575 (D. Idaho 1984).

Argument Eleven

A person commits official Misconduct who intentionally or recklessly fails to "perform a Mandatory duty as required by law." 720 ILCS 5/33-3 Our Supreme Court has repeatedly "asserted that the term 'law' in the official Misconduct Statute includes a civil or penal statute, a Supreme Court rule, administrative rules, or regulation, or tenet of a professional Code." People v. Williams, 239 Ill. 2d 119, 127, 346 Ill. Dec. 50, 940 N.E. 2d 50 (2010).

Argument Twelve

a) A Claim for Aiding and abetting requires that: "(1) the party whom the defendant aids must perform a wrongful act which Causes an Injury; (2) the defendant must be generally aware of his role as part of the over all or tortious activity at the same time that he provides the assistance; and (3) the defendant must Knowingly and Substantially assist the principle Violation." Wolf N. Liberis, 153 Ill. App 3d 488, 496 (1987). An aiding and abetting claim, like a Civil Conspiracy Claim, however, is not an independent tort. Chadha v. North Park Elementary School Ass'N, 2018 IL App (1st) 171958, 958. Aiding and abetting, therefore, requires underlying Conduct that is tortious, breaches a fiduciary duty, or violates a statute. Thornwood, Inc. v. Jenner and Block, 344 Ill App 3d 15, 27-28 (2003).

b) Illinois Admin Code 2220.40 Compliance with Laws - An employee Shall obey all Federal, State, and local laws and applicable Court decisions and orders related to the performance of their Service to the Department

c) Illinois Admin Code 2220.95 Giving False Information - Employees who Knowingly provide false information Shall be Subject to disciplinary action, including termination of employment

d) Illinois Admin Code 2220.100 Violation of Rules - Failure to Comply with any of the foregoing rules of Conduct May result in discipline, termination of Services, or restriction from entering all or Some Department facilities.

17

In The United States District Court
For The Southern District of Illinois

Francisco Zapeda, pro se
    Plaintiff
    V.
LaToya Hughes, David Mitchell
Sgt Spencer, John Barwick et al.,
    Defendants

Case No. 3125-cv-01825-RJD
To be Supplied by Clerk
§1983 Civil Action
State Prisoner

Summons

To The Above Defendants

You are hereby summoned and requested to serve upon Plaintiff whose address is 9830 Shattuc Road Centralia, Illinois 62801 an answer to the complaint which is herein served upon you, within 20 days after service of this summons upon you, exclusive of the day of service or 60 days if the U.S. Government or officer / Agent thereof is a defendant. If you fail to do so, Judgment by default will be taken against you for the relief requested in the complaint.

Clerk of the Court

Date:

Warden David Mitchell

Can you please ensure your security and healthcare staff are following your prevention for heat related illnesses protocol and that they understand the difference bewtween the outside temperature and the heat index and the effects of humidity? please ensure that per your protocol, when the heat index reaches 85 gerees that staff are:

1. Passing out ice twice per day
2. Food Laches are open from morning till nighfall
3. Ensure cold water taps are working in cells
4. Ensure all ventillation systems are working properly and are turnedon on the wings
5. Ensure all ventillation box and oscillating fans are on the wings and working properly
6. Monitor the temperature in cells and on thewings and ensure that they are documented

When the heat index is 95 degrees caN YOU ENSURE THAT your medical director, and healthcare unit administator know to provide electrolyte fluid to persons in custody who are high  risk of hyperthermia such as the elderly, obese, those with cardiovascular disease and that have neurological and psychiatric disorders as well as those who use medications such as diuretics or cholinergi -cs.

Dated 7/1/23

Respectfully,

RECEIVED Grievance administration  Pinckneyville C.C.

RECEIVED  JUL 31 2023

RECEIVED  AUG 03 2023

Housing Unit  1A 21  RECEIVED 1

AUG 08 2023

2441 07-23 PNK

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Offender's Grievance**

| Date: 07/28/23 | Offender (please print) Francisco Zepeda | ID #: Y30997 | Race (optional): |
|---|---|---|---|

| Present Facility Pinckneyville C.C. | Facility where grievance issue occurred: Pinckneyville C.C. |
|---|---|

**Nature of grievance:**

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Disciplinary Report
- ☐ Mail Handling
- ☐ Dietary
- ☐ Other (specify): _____
- ☒ Medical Treatment
- ☐ HIPAA
- ☐ ADA Disability Accommodation
- ☐ Restoration of Sentence Credit

_____ Date of report _____ Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance".

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to review by the Administrative Review Board
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor
Chief Administrative Officer, only if EMERGENCY grievance
Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

On 07/01/23 I wrote a letter to warden david Mitchell informing him that his staff was not following his Prevention of Heat Related Illnesses Memo dated June 13, 2022 and requested that he inform and direct his staff to follow his memo. I informed him that food latches were not being left open, ventilation systems were not operable or turned on on the wings, cell temperatures and wing temperatures were not being monitored and logged, and that ice water is not passed out as per his memo. Additionally he was informed through my letter that there were no fans on the wings at all as per his memo to prevent heat realted illnesses and that institutions physician is not monitoring the most vulnerable such as people with chronic disease, the elderly, obese, those with cardiovascular disease and those with neurological or psychological disorders who may require elctrolyte fluids.

☒ Continued on reverse

**Relief Requested:**

For Pinckneyville C.C. to follow its own Prevention of Heat Related Illnesses policy/Memo and take any and all further action as necessary to prevent heat realted illinesses and or deaths up to and including allowing shorts to be worn everywhere in the facility as they are adequate for the season and weather. Lastly not to be retaliated against or targeted in any way for writing this grievance.

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

☐ Check if this is NOT an emergency grievance.

| _____ Offender's Signature | Y30997 ID# | 7/28/23 Date |
|---|---|---|

(Continue on reverse side if necessary)

Counselor's Response (if applicable)   Date Received: 8/1/23  ☒ Send directly to Grievance Officer

☐ Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

Response:

Per the memo food latches are to be left open on solid cell room doors here at PNK. the cell doors are vented. All staff have been provided the heat related illness memo and have been reminded to stay vigilant in this time during high heat temperatures. Cell temperatures are monitored daily. In regards to ventilation the maintenance department has stated there is air movement on the wings and all the fans that are operable are on. Per memo ice is to be passed out twice.
KSmith

| KSmith Print Counselor's Name | KSmith Sign Counselor's Name | 8/1/23 Date |
|---|---|---|

Note to offender: If you disagree with the counselor's response, it is your responsibility to forward grievance with counselor's response to the grievance officer.

EMERGENCY REVIEW:   Date Received: 7/31/23

Is this determined to be of an emergency nature?

☐ Yes, expedite emergency grievance
☒ No, an emergency is not substantiated. Offender should submit this grievance according to standard grievance procedure

| David Mitchell Chief Administrative Officer's Signature | 7/31/23 Date |
|---|---|

Distribution: Master File, Offender    Page 1 of 2    DOC 0046 (Rev. 01/2020)

Assigned Grievance # Institution **Pinckneyville C.C.**    Housing Unit **1A 21**    Bed # **1**

1st Lvl rec **88 BUA**

### ILLINOIS DEPARTMENT OF CORRECTIONS
### Offender's Grievance

2nd Lvl rec

On 07/27/2023 during medline at approximately 8:30 pm several inmates including myself asked that the policy be followed and that the food latches be left open for air circulation. A female Sgt. short with brown/blond hair ( possible Sgt Spencer) passed by my door and I showed her the Memo from Pinckneyville C.C. dated June 13, 2023 from warden david Mitchell. After reading the memo she stated that Pinckneyville C.C. does not have solid cell doors so their own memo does does not apply. On June 30, 2023 I sent a request to the IDOC Freedom Of Information Act Officer in Sprinfield a request for the documents showing where Pinckneyville C.C. has monitored and recorded Cell and wing temperatures and to date IDCO springfield's Freedom of Information Act Officer has not responded to my request.  On 07/28/23 Officer Loyd and Sgt known as Ms. H on first shift were shown a copy of the Prevention of heat related Illnesses memo fro m Pinckneyville C.C. date June 13, 2023 from Warden david Mitchell and they said they would look into it. On or about 07/25/23  Pinckneyville installed a fan in the foyer area for the officers due to the heat when the foyer area is already air conditioned. The heat alerts and emeregencies in the area of Pinckneyville C.C are known and mitigation is properly happening for officers but not for inmates. This is a form of torture and brutality that is an offense against the evoloving standards of decency for an elvoving society and such offences are no longer acceptable for even a dog or other pets in this society let alone any human being , especially those for whom you are completely liable for from the absence of such liberty as to be allowed to care for it ourselves.  This riosk of life is unneccessary and readily preventable.

atribution Master File Offender    DOC 0046 (Rev. 01/2020)

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO OFFENDER'S GRIEVANCE

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 08/08/2023 | Date of Review: 08/28/2023 | Grievance # (optional): 2441-07-23 |
| Offender: Zepeda, Francisco | | ID#: Y30997 |

1A21

Received 8/31/2?
9:16 pm

**Nature of Grievance:**

Conditions

**Facts Reviewed:**

Grievant states on 7/1/23 they wrote a letter to warden Mitchell about staff not following the prevention of heat related illnesses memo. Grievant states the food latches were not being opened, the ventilation systems were not operable, cell and wing temperatures were not monitored, and ice water is not passed out per memo. Grievant states fans were not being used on wings and physicians were not monitoring vulnerable people with chronic disease, elderly, obese, cardiovascular disease, neurological and psychological disorders who may require electrolyte fluids. Grievant states on 7/27/23 they asked Sgt. Spencer about the memo with food latches and she stated it does not apply as the doors are vented. Grievant states they requested FOIA on 6/30/23 pertaining to wing temperatures at PNK. Grievant states on 7/25/23 a fan was installed in the foyer but was for staff.

Relief requested:
Follow prevention of heat related illnesses policy, not be retaliated.

Grievance officer response:
R&M funds to replace FSU and exhaust fans was submitted on June 13th, 2023. Individuals may put in a NSC to be seen or notify staff of medical emergency. Ice is passed out once on 7-3 shift and once on 3-11 shift. Wing temperatures are recorded by Johnson Controls. PNK cell doors are vented, therefore, there is no need to open food latches by the discretion of staff.

**Recommendation:**

Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the grievance be DENIED.

| J. Saddler, CCII | |
|---|---|
| Print Grievance Officer's Name | Grievance Officer's Signature |
| (Attach a copy of Offender's Grievance, including counselor's response if applicable) | |

| Chief Administrative Officer's Response | | | |
|---|---|---|---|
| Date Received: 8/29/23 | ☑ I concur | ☐ I do not concur | ☐ Remand |
| Action Taken: | | | |

| Chief Administrative Officer's Signature | 8/29/25 |
|---|---|
| | Date |

| Offender's Appeal To The Director | |
|---|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

| Offender's Signature | Y30997 | 9/8/2? |
|---|---|---|
| | ID# | Date |



J.B. Pritzker
Governor

Latoya Hughes
Acting Director

R-e-c 12/12/23

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Name:    Zepeda, Francisco

11/17/23
Date

ID# :    Y30997

Facility:    Pinckneyville

This is in response to your grievance received on  9/13/2023 . This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: 7/28/2023    Grievance Number: 2441-07-23    Griev Loc: Pinckneyville

☐   Medical

☐   Dietary

☐   Personal Property

☐   Mailroom/Publications

■   Staff Conduct _____ Claims staff are not following Warden Mitchell's memo - prevention of heat related illnesses on 7/1/23.

☐   Commissary / Trust Fund

☐   Conditions (cell conditions, cleaning supplies, etc.)

☐   Disciplinary Report: Dated: _____ Incident #

☐   Other

**Based on a review of all available information, this office has determined your grievance to be:**

☐ Affirmed

☐ Denied, in accordance with DR504F, this is an administrative decision.

■ Denied, this office finds the issue was appropriately addressed by the facility Administration.

☐ Other: _____

☐ Denied as the facility is following the procedures outlined in DR525.

☐ Denied as procedures were followed in accordance with DR 420 for removal/denial from/for an assignment.

☐ Denied as this office finds no violation of the grievant's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offense cited in the report was committed.

FOR THE BOARD: *Margaret Madole*
Margaret Madole
Administrative Review Board

CONCURRED: *Latoya Hughes*
Latoya Hughes
Acting Director

CC: Warden, Pinckneyville _____ Correctional Center
Zepeda, Francisco _____ , ID# Y30997

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

08/01/2023

Latoya Hughes
IDOC Director
1301 Concordia Court
P. O. Box 19277
Springfield, IL 62794-9277


Francisco Zepeda Y30997
5835 State Route 154
Pinckneyville, IL 62274


Re: Violation of 730 ILCS 5/3-7-2 & IDOC Prevention of Heat Related Illnesses
    Policy


The Illinois Department of Corrections, (IDOC) is in vilation of Illinois
Law 730 5/3-7-2 which stipulates, "All institutions and facilities of the
department shall provide every committed person with clothing adequate for
the season". Currently committed persons are only provided with State blue
pant and blue shirts  which serve as winter weather clothing for temperatures
that routinely reach 15 degrees below zero(F). Committed persons are are
required to wear these same clothing items in wether where the temperature
routinely reaches over 100 degree (f). No reasonable person would infer that
clothing adequate for winter could be adequate for summer or vice versa. At
times IDOC has shorts available for purchase through it's commissary for those
who can afford it. Still committed person are not allowed to wear even the
purchased seasonal clothing everywhere in the facility during the aprppriate
seasons. Committed person are restricted from wearing their purchased seasonal
clothing in the chow hall, (one of the hottest places), in the barbershop,
commissary, healthcare unit, or anywhere in the school building, except for
gym. This restriction of not providing seasonal clothing and allowing it to
be worn throughout the institution during the appropriate season, serves no
legitămate security or penological purpose or function. It is only meant to
be cruel and unusual for the sake of being cruel and unusual.


Addittionaly, IDOC, (pinckneyville C.C.) is in vioătăon of it's own preventiop
of Heat Related Illnesses Policy designed to offer protection to the most
vulnerable population in IDOC. The policy is intended to protect the elderly,

1 of 2

obese, those with cardiovascular disease, neurological and psychological disorders, and those that take certain medication that can lead to dehydration such as diueretics. This policy is being ignored even during nationwide heat alerts with heat indexes reaching into over 100 degree with high humidity in the 70's. IDOC,(Pinckneyville C.C.) has failed to ensure their blowers are functioning and on, that food latches are open from morning till nightfall to assist with circulation of air, to provide fans on the wings epsecially when they feel the need to offer extra circulation for officer that already have access to air conditioning in the areas where the fans have recently been installed.  IDOC ha sfaile dto pass out elctrolyte fluid or make it available for purchase to reduce the risk of heated related harm or lingering death from it. Committed persons are just left to bake alive in their cells without any reasonable relief provided, even when the law and policy allows it, and demands it.

Relief sought: To have all committed persons provided with proper seasonal clothing, ie shorts and a light t-shirt. That all committed persons be allowed to wear the provided and or purchased seasonal clothing throughout the institution during the appropriate seasons. To have the blowers operational and turned on, on all wings to reduce weather related illnesses. To have additional fans on each wings to offer circulation and that those fans be turned on. To be offered electrolyte fluids during the hot seasons and or for it to be made available for purchase in powder form to make it easier to keep and stay in compliance with property box checks. In short for IDOC to follow the Law and it's own policy and not risk the life of committed persons for any reasons more especially just to be deliberately indifferent.

cc.
The Honorable Lt. Governor L. Stratton
ACLU of Illinois
Equip for Equality
Prison Legal News
Uptown Peoples Law Center
The John Howard Association

2 of 2

AUG 25 2023

RECEIVED _____ Pinckneyville C.C.                    Housing Unit ___1 A 2___  Box #. ____

AUG 23 2023   2771.08.20 PNK   ILLINOIS DEPARTMENT OF CORRECTIONS              RECEIVED
                                    **Offender's Grievance**                   2nd Lvl roc ___ 2023

| Date: 8/22/23 | Offender (please print): Francisco Zepeda | ID #: Y30997 | Race (optional): |
| Present Facility: Pinckneyville C.C. | | Facility where grievance issue occurred: Pinckneyville | |

**Nature of grievance:**

☐ Personal Property          ☐ Mail Handling        ☐ Medical Treatment      ☐ ADA Disability Accommodation

☒ Staff Conduct              ☐ Dietary              ☐ HIPAA                  ☐ Restoration of Sentence Credit

☐ Transfer Denial by Facility ☒ Other (specify): Violation of State Law

☐ Disciplinary Report

_____ Date of report _____   _____ Facility where issued _____

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance":

    Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to review by the Administrative Review Board
    Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor
    Chief Administrative Officer, only if EMERGENCY grievance
    Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

The Illinois Department Of Correction, (IDOC) and Pinckneyville C.C. is
in ~~violation of Illinois Law~~ 730 ILCS 5/3-7-2 § (d) which stipulates, "all
institutions and facilities of the department shall provide every committed
person with clothing adequate for the season". Currently ~~committed persons~~
~~are only provided with state blue pants and blue shirts~~ that must be tucked
in ~~at all times and traps heat on the body doing such. These state blues~~
~~are issued and serve as winter weather clothing for temperatures that~~
~~routinely reach 15 below zero (f). Committed persons are required to wear~~
~~these same state blues in~~ weather where the temperature reaches 100 degrees
(f.) without the heat index. No reasonable person would infer that clothing

☐ Continued on reverse

**Relief Requested:**

To be provided with weather appropriate clothing for the summer months as
per 730 ILCS 5/3-7-3 § (d) ~~and until such time, that I am allowed to wear~~
~~purchased~~ seasonal clothing such as shorts and a white t-shirt throughout
the institution to helpe prevent heat related illnesses that threated my
health. ~~To not be retaliated against or targeted for writing this grievance~~

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

☒ Check if this is NOT an emergency grievance.

_____ Offender's Signature          Y30997          8/22/23
                                                  ID#              Date

(Continue on reverse side if necessary)

Counselor's Response (if applicable)   Date Received: 8/28/23.   ☒ Send directly to Grievance Officer

☐ Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

Response:

Per orientation manual individuals in custody are expected to be
fully dressed (shoes/boots, shirt and pants) when leaving the housing unit. Shirts
must be fully buttoned to the to the second button down from the collar
and tucked in. Pants are always required to be fastened and kept at the
natural waistline. When individual are in the housing unit, and during
daytime activity informal dress (no pyjamas) is authorized. Gym shorts and
tee shirts are permissible.

K Smith _____          KSmith _____          8/31/23
Print Counselor's Name             Sign Counselor's Name             Date

Note to offender: If you disagree with the counselor's response, it is your responsibility to forward grievance with counselor's response to the grievance officer.

RECEIVED

OCT 10 2023

ADMINISTRATIVE
REVIEW BOARD

EMERGENCY REVIEW:   Date Received   8/23/23

Is this determined to be of an emergency nature?

☐ Yes: expedite emergency grievance

☒ No, an emergency is not substantiated. Offender should submit this grievance according to standard grievance procedure

_____ Chief Administrative Officer's Signature          8/23/27
                                                                     Date

Distribution: Master File, Offender                      Page 1 of 2

Assigned Grievance _____ Pinckneyville C.C.   Housing Unit __ 1 A 21   Bed # _____

1st Lvl rec: _____

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Offender's Grievance**                           2nd Lvl rec: _____

adequate for winter temperatures could be adequate for summer temperatures
or vice versa. At times IDOC has shorts available for purchase through it's
commissary, for those who can afford it. Still, committed persons are not
allowed to wear even the purchased seasonal clothing most places in the
intstiution. Committed persons are restricted from wearing purchased shorts
in the chow hall, (one of the hottest places in the institution), in the
barbershop, healthcare unit, or anywhere in the school building except for
the gym. These restrictions of not allowing and not providing seasonal
clothing to be worn throughout the institution serves no legitimate securi-
-ty or penological purpose or function, it is only meant to be crueal and
unusual for the sake of being cruel and unusual. The need and legal requir-
ment to provide all committed persons with clothing adequate for the season
is not a matter of policy, but a matter of law. The failure to provide and
allow seasonal clothing to be worn throughout the institution puts lives at
riskleaving people subseptible to increased weather related illnesses that
are readily preventable and threaten my current and future health.

This has been happening at Pinckneyville C.C. since I arrived July, 2021 til

now and it is the repsonsiblity of the Warren, David Mitchell to ensure all

Illinois laws, policy, and procedure and statutes are followed.

8/21/23 heat index wes approximately 111°F and forced
to wear State Blue pants and Shirts to Chow hall, 8/22/23
Heat index is over 111°F

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO OFFENDER'S GRIEVANCE

IA21

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 09/06/2023 | Date of Review: 09/26/2023 | Grievance # (optional): 2771-08-23 |
| Offender: Zepeda, Francisco | | ID#: Y30997 |

**Nature of Grievance:**

Clothing

**Facts Reviewed:**

Grievant states that IDOC should issue clothing adequate for the season and is in violation of this. Grievant states they only received blue shirts and pants that must be tucked in. Grievant states this is to be worn year round. Grievant states this should not be the case. Grievant states most are not allowed to wear the purchased clothing around the institution. Grievant states on 8/21/23 the heat index was approximately 111 degrees and was forced to wear state blue pants and shirts to chow.

Relief requested:
Be provided with weather appropriate clothing for summer months and until then be allowed to wear purchased seasonal clothing to prevent heat related illnesses

Counselor response:
Per orientation manual, individuals in custody are expected to be fully dressed (shoes/boots, shirt and pants) when leaving the housing unit. Shirts must be fully buttoned to the second button down from the collar and tucked in. Pants are always required to be fastened and kept at the natural waist line. When individuals are in the housing unit, and during day room activity informal dress (no pajamas) is authorized. Gym shorts and t-shirts are permissible.

Grievance officer response:
The counselor addressed the grievant's issue appropriately.

**Recommendation:**

Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the grievance be DENIED.

J. Saddler, CCII

| Print Grievance Officer's Name | Grievance Officer's Signature |
|---|---|

(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: 9/27/23 | ☒ I concur     ☐ I do not concur | ☐ Remand |
| Action Taken: | | |

Chief Administrative Officer's Signature     9/27/23
Date

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

| Offender's Signature | ID# | Date |
|---|---|---|

J.B. Pritzker
Governor



Latoya Hughes
Acting Director

Rec 1/29/24

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Name:    Zepeda, Francisco

1/16/24
Date

ID# :    Y30997

Facility:    PNK

This is in response to your grievance received on __10/10/23__. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: 8/22/23    Grievance Number: 2771-08-23    Griev Loc: PNK

☐ Medical _____

☐ Dietary _____

☐ Personal Property _____

☐ Mailroom/Publications _____

☐ Staff Conduct _____

☐ Commissary / Trust Fund _____

☐ Conditions (cell conditions, cleaning supplies, etc.) _____

☐ Disciplinary Report: Dated: _____ Incident # _____

☑ Other    Policy: Claims facility does not provide and allow adequate seasonal clothing to be worn throughout the institution.

**Based on a review of all available information, this office has determined your grievance to be:**

☐ Affirmed

_____

☐ Denied, in accordance with DR504F, this is an administrative decision.

☑ Denied, this office finds the issue was appropriately addressed by the facility Administration.

☐ Other: _____

☐ Denied as the facility is following the procedures outlined in DR525.

☐ Denied as procedures were followed in accordance with DR 420 for removal/denial from/for an assignment.

☐ Denied as this office finds no violation of the grievant's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offense cited in the report was committed.

FOR THE BOARD: _____
Ryan Nothnagle
Administrative Review Board

CONCURRED: _____
Latoya Hughes
Acting Director

CC:  Warden,  PNK  Correctional Center
Zepeda, Francisco  , ID# Y30997

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

To: Werden John Berrwick

Francisco Zepeda Y30997
5835 State Route 154
Pinckneyville, IL 62274

Prisoner's are entitled to the minimal civilized measure of life necessities, including adequate shelter, which includes prootection from extreme heat. Prisoners are wards of the state and have no means in which to protect themselves from high temperatures. As of June 13, 2024 Pinckneyville C.C. area has had temperatures at and above 100 degress by the NWS heat index table and therefore even hotter inside these concrete walls. The news has reported that the extreme tempertures are a threat to the community at large, especially disabléd high risk individuals such as the elderly, obese, those with cardio-vascular disease, neurological or psychologicol disorders.  I attempted to address this issue with IDOC last year in grievance #2441-07-23, pointing out how nothing was being done to mitigate the temperature to 85 degress or below, leaving inmates to suffer needlessly. Pinckneyville C.C. does not have external fans blowing on the wings like the ones installed in the foyer area last year to protect security staff. The food latches are not open to create a cross breeze. Ice water has never been passed, nor frequency of the availabllity of ice, with no ice being passed out the evening of June 16, 2024. Electrolyte fluid is not offered or sold to inmates to help protect themselves. I do not think it is too much to ask that a gatoraide powder be sold inmates. Also, inmates are forced to wear state blues (their winter clothing) inside the institution during extremely high temperature, putting them at further risk of heat related illness or death. I tried to address this in grievance #2271-08-20. Neither the wings nor the cells are air-conditioned and there is no attempt to mitigate or regulate the temperatures which inmates are exposed to. This is not just deliberate indifference, but cruel and unusual punishment, If not torture. even if or when the policy is followed, if it does nothing to regulate the temperature to 85 degressor lower inside the wings and cells

using the NWS heat index table, then inmates are still unsafe and other measures need to be found and enforced. I am asking for reasonable accomodations for inmates at Pinckneyville C.C. to have the temperature regulated to 85 degrees or lower and for you  to enforce your authority to ensure it happens.

Dated 6/29/24

Sincerly,

2.

Latoya Hughes
Director-IDOC
1301 Concordia Court
Springfield, Illinois 62794


Francisco Zepeda Y30997
5835 State Route 154
Pinckneyville, IL 62274



Director Hughes:

Prisoner's are entitled to the minimal civilized measure of life necessities, including adequate shelter, which includes pootection from extreme heat. Prisoners are wards of the state and have no means in which to protect themselves from high temperatures. As of June 13, 2024 Pinckneyville C.C. area has had temperatures at and above 100 degress by the NWS heat index table and therefore even hotter inside these concrete walls. The news has reported that the extreme tempertures are a threat to the community at large, especially disabled high risk individuals such as the elderly, obese, those with cardio-vascular disease, neurological or psychologicol disorders. I attempted to address this issue with IDOC last year in grievance #2441-07-23, pointing out how nothing was being done to mitigate the temperature to 85 degress or below, leaving inmates to suffer needlessly. Pinckneyville C.C. does not have external fans blowing on the wings like the ones installed in the foyer area last year to protect security staff. The food latches are not open to create a cross breeze. Ice water has never been passed, nor frequency of the availabllity of ice, with no ice being passed out the evening of June 16, 2024. Electrolyte fluid is not offered or sold to inmates to help protect themselves. I do not think it is too much to ask that a gatoraide powder be sold inmates. Also, inmates are forced to wear state blues (their winter clothing) inside the institution during extremely high temperature, putting them at further risk of heat related illness or death. I tried to address this in grievance #2271-08-20. Neither the wings nor the cells are air-conditioned and there is no attempt to mitigate or regulate the temperatures which inmates are exposed to. This is not just deliberate indifference, but cruel and unusual punishment, If not torture. even if or when the policy is followed, if it does nothing to regulate the temperature to 85 degressor lower inside the wings and cells

using the NWS heat index table, then inmates are still unsafe and other measures
need to be found and enforced. I am asking for reasonable accomodations for
inmates at Pinckneyville C.C. to have the temperature regulated to 85 degrees
or lower and for you  to enforce your authority to ensure it happens.


Dated 6/30/24                                      Sincerly,

2.

U.S. Department of Justice
Civil rights Division
10th/Pennsylvania Ave. N.W.
Washington, D.C. 20503


Francisco Zepeda Y30997
5835 State Route 154
Pinckneyville, IL 62274


Dear Sir or Madam:


Prisoner's are entitled to the minimal civilized measure of life necessities,
including adequate shelter, which includes pootection from extreme heat.
Prisoners are wards of the state and have no means in which to protect them-
selves from high temperatures. As of June 13, 2024 Pinckneyville C.C. area
has had temperatures at and above 100 degress by the NWS heat index table and
therefore even hotter inside these concrete walls. The news has reported that
the extreme tempertures are a threat to the community at large, especially
disabléd high risk individuals such as the elderly, obese, those with cardio-
vascular disease, neurological or psychologicol disorders.  I attempted to
address this issue with IDOC last year in grievance #2441-07-23, pointing out
how nothing was being done to mitigate the temperature to 85 degress or below,
leaving inmates to suffer needlessly. Pinckneyville C.C. does not have external
fans blowing on the wings like the ones installed in the foyer area last year
to protect security staff. The food latches are not open to create a cross
breeze. Ice water has never been passed, nor frequency of the availabllity of
ice, with no ice being passed out the evening of June 16, 2024. Electrolyte
fluid is not offered or sold to inmates to help protect themselves. I do not
think it is too much to ask that a gatoraide powder be sold inmates. Also,
inmates are forced to wear state blues (their winter clothing) inside the
institution during extremely high temperature, putting them at further risk
of heat related illness or death. I tried to address this in grievance #2271-
08-20. Neither the wings nor the cells are air-conditioned and there is no
attempt to mitigate or regulate the temperatures which inmates are exposed to.
This is not just deliberate indifference, but cruel and unusual punishment,
If not torture. even if or when the policy is followed, if it does nothing to
regulate the temperature to 85 degressor lower inside the wings and cells

using the NWS heat index table, then inmates are still unsafe and other measures
need to be found and énforced. I am asking for reasonable accomodations for
inmates at Pinckneyville C.C. to have the temperature regulated to 85 degrees
or lower and for you  to enforce your authority to ensure it happens.


Dated 6/30/24                                      Sincerly,

2.

HON. J. B. Pritzker
Governor-State of Illinois
207 State House
Springfield, Illinois 62706


Francisco Zepeda Y30997
5835 State Route 154
Pinckneyville, IL 62274



Dear Governor:

Prisoner's are entitled to the minimal civilized measure of life necessities,
including adequate shelter, which includes pootection from extreme heat.
Prisoners are wards of the state and have no means in which to protect them-
selves from high temperatures. As of June 13, 2024 Pinckneyville C.C. area
has had temperatures at and above 100 degress by the NWS heat index table and
therefore even hotter inside these concrete walls. The news has reported that
the extreme tempertures are a threat to the community at large, especially
disabled high risk individuals such as the elderly, obese, those with cardio-
vascular disease, neurological or psychologicol disorders.  I attempted to
address this issue with IDOC last year in grievance #2441-07-23, pointing out
how nothing was being done to mitigate the temperature to 85 degress or below,
leaving inmates to suffer needlessly. Pinckneyville C.C. does not have external
fans blowing on the wings like the ones installed in the foyer area last year
to protect security staff. The food latches are not open to create a cross
breeze. Ice water has never been passed, nor frequency of the availability of
ice, with no ice being passed out the evening of June 16, 2024. Electrolyte
fluid is not offered or sold to inmates to help protect themselves. I do not
think it is too much to ask that a gatoraide powder be sold inmates. Also,
inmates are forced to wear state blues (their winter clothing) inside the
institution during extremely high temperature, putting them at further risk
of heat related illness or death. I tried to address this in grievance #2271-
08-20. Neither the wings nor the cells are air-conditioned and there is no
attempt to mitigate or regulate the temperatures which inmates are exposed to.
This is not just deliberate indifference, but cruel and unusual punishment,
If not torture. even if or when the policy is followed, if it does nothing to
regulate the temperature to 85 degressor lower inside the wings and cells

using the NWS heat index table, then inmates are still unsafe and other measures need to be found and Enforced. I am asking for reasonable accomodations for inmates at Pinckneyville C.C. to have the temperature regulated to 85 degrees or lower and for you  to enforce your authority to ensure it happens.


Dated 6/30/24                              Sincerly,

2.



# OFFICE OF THE GOVERNOR

207 STATE HOUSE
SPRINGFIELD, ILLINOIS 62706

**JB PRITZKER**
GOVERNOR

July 12, 2024

Francisco Zepeda
Y30997
Pinckneyville C.C.
5835 State Rt. 154
Pinckneyville, IL 62274

Dear Francisco,

Thank you for contacting the office of Governor JB Pritzker. The Governor makes it a top priority to take all constituent correspondence into consideration. All comments, concerns, and suggestions are welcome.

We have created a case in our office for your request and are diligently working to get it resolved. Please note that case work processing can take up to 30 days. However, we work to get your requests completed as soon as possible. If you do not hear back from the respective state agency within 30 days of your request, please contact our Constituent Affairs team. They can be reached at 217-782-0244.

Sincerely,

Governor's Office of Constituent Affairs



| JB Pritzker<br>Governor | | Latoya Hughes<br>Acting Director |
| --- | --- | --- |

## The Illinois Department of Corrections

Pinckneyville Correctional Center
5835 State Route 154 • Pinckneyville, IL  62274-3410 • (618) 357-9722 TDD: (800) 526-0844

# MEMORANDUM

**DATE:**    July 24, 2024

**TO:**    Francisco Zepeda Y30997
Pinckneyville Correctional Center

**FROM:**    John M. Barwick, Warden

**SUBJECT:**    Correspondence – GOCA Case # 1243

Your correspondence to Governor J.B. Pritzker's office has been forwarded to my office to address.

Pinckneyville CC has blowers on all housing unit wings designed to intake fresh air and exhausters to assist in air circulation.  All cell doors have screens in the cell doors and external windows that open to assist further in getting air flow.  Ice is passed out twice a day to each housing unit.  All cells are equipped with cold running water.  Gatorade and Bottled water are also available for purchase from the commissary.  Individuals in custody may wear shorts and t-shirts while in the housing unit, at the gym or on the yard.  Individuals in custody are required to wear blue state pants and a short sleeve blue state shirt when not on their assigned wing.

I trust this letter addresses your concerns.

cc:    Master File – F. Zepeda Y30997
       CHAMP Entry
       GOCA Case #1243
       File

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

Sent to Gov. and Warden
7/31/24

July 27, 2024
To: warden Barwick
From: Francisco Zepeda Y30997
Re: your correspondence Goca Case #1243.

Warden Barwick:

I received your correspondence dated July 24, 2024 regarding-Goca case 31243. Although I appreciate your letter, it does not address my concerns. Your letter restates portions of policy while ignoring other portions. According to P Pinckneyville's Heat Related Illness policy:

1. Ice is supposed to be passed out twice per day.
However, some days it is not passed out at all on certain shifts, usually second shift. Other days, since inmates must choose between Yard/gym or dayroom they are not allowed to get ice on those days as it would have been passed out during dayroom while lines where out.

2. For solid cell doors, food latches are to be open from morning till nighfall.
Pinckneyville's doors are solid as they are not made up of bars. At any rate having the food latches open would mitigate some issues with the heat, which is the purpose of the policy and its goals.

3. The policy states, ensure all ventillation, box fans and oscillating fans are operable.
However Pinckneyville does not have box or oscillating fans as required by the policy. Last year external fans were installed into all foyers to assist officers mitigating the heat in an area that is air conditioned, but inmates where left out of that thought.

4. Tempertures on the wings and in the cells are to be documented on the shift report.
However, temperatures are not monitored to record on the shift report

5. Per policy, if the heat index is 95° or above electrolyte fluid should be provided to high risk individuals.

At times gatoraide bottle,which are $1.50 are offered in commissary. This is veryexpensive to an inmate and there are limits on how many you can buy. A cheaper gatoraide powder would be helpful, even though at times Pinckneyville is required to provide it at no cost to certain inmates.

You have authorized the purchase of two fans, but they are very small, about 5"'s  and do not provide much protection from the heat.

Lastly, How can Pinckneyville see itself trying to  mitigate heat related illnesses when inmates are required to wear state blues (winter clothing) during hot weather? Per 730 ILCS 5/3-7-2 the department is required to provide weather appropriate clothing and does not. Still inmates are not allowed to wear shorts purchased on commissary which pose no security risk. Inmates are required to wear shorts if they are coming back from yard/gym lines and we run to chow before returning to the unit. This proves that they are not a risk. Also, inmates where shorts to healthcare when they taken there for incidents.

I am simple asking you to make an effort to mitigate the heat and in some instances to just follow already established policy.

Francisco Zepeda Y30997

SEP 11 2024

Assigned Grievance #/institution: Pinckneyville C.C.    Housing Unit: 1A -21    Bed #: 1

SEP - 4 2024

1st Lvl rec: K59·0924.3183    **ILLINOIS DEPARTMENT OF CORRECTIONS**
**Individual in Custody's Grievance**    2nd Lvl rec: SEP 2 5 2024

| Date: 09/01/24 | Individual in Custody (please print): Francisco Zepeda | ID #: Y30997 | Race (optional): |
|---|---|---|---|
| Present Facility: Pinckneyville C.C. | | Facility where grievance issue occurred: Pinckneyville C.C. | |

**Nature of grievance:**

☐ Personal Property          ☐ Mail Handling          ☒ Medical Treatment          ☐ ADA Disability Accommodation

☒ Staff Conduct             ☐ Dietary               ☐ HIPAA                      ☐ Restoration of Sentence Credit

☐ Other (specify).

☐ Disciplinary Report

_____ Date of report          _____ Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance":

    Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to review by the Administrative Review Board
    Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor
    Chief Administrative Officer, only if EMERGENCY grievance
    Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

From at least June through August 2024 Pinckneyville, Illinois has had a majority of the days in excess of 90 degrees heat index. August 18th 2024 through August 30 2024 the temperature was in the mid 90's and with excessive humidity, the index was in triple digits with many of those days in a heat warning or heat advisory.

On or about July 2023 and again on or about July 2024 Pinckneyville C.C. installed 30" wall mounted fans in the air conditioned foyer area of R1 Housing unit to mitigate the heat threating the health and safety of staff.    ☒ Continued on reverse

**Relief Requested:**

Not to be retaliated against for this grievance. To have fans installed on all wings to protect inmates from the heat like as has been provided for staff. for food latches to be open from morning til nightfall, as per policy to mitagate the heat. for the ventillation system to be operable and on at all times on high settings.

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

☐ Check if this is NOT an emergency grievance.

_____ Individual in Custody's Signature          Y30997 ID#          09/01/24 Date

(Continue on reverse side if necessary)

Counselor's Response (if applicable).    Date Received: _____    ☒ Send directly to Grievance Officer

☐ Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

Response:

Per maintenance the ventilation system is working and there is air flow on the wings. The food latches are to be opened on doors without vents. PNK CC doors have vents on them.

_____ K. Smith          _____ KSmith          9/23/24
Print Counselor's Name          Sign Counselor's Name          Date

Note to individual in custody: If you disagree with the counselor's response, it is your responsibility to forward grievance with counselor's response to the grievance officer.

EMERGENCY REVIEW:    Date Received: 9-6-24

Is this determined to be of an emergency nature:

☐ Yes, expedite emergency grievance
☒ No, an emergency is not substantiated. Individual in custody should submit this grievance according to standard grievance procedure

_____ Chief Administrative Officer's Signature          9-6-24 Date

Distribution: Master File; Individual in Custody          Page 1 of 2          DOC 0046 (Rev. 6/2023)

RECEIVED

OCT 0 4 2024

ADMINISTRATIVE
REVIEW BOARD

ZEPEDA ARB 0012

Assigned Grievance Institution: __Pinckneyville C.C.__                  Housing Unit: __1A-21__    Bed #. __1__

1st Lvl rec.                    **ILLINOIS DEPARTMENT OF CORRECTIONS**              2nd Lvl rec. _____
                               **Individual in Custody's Grievance**

I have written correspondences and grievances  2241-07-23, and 2771-08-20 seeking for Pinckneyville C.C. to offer some constitutionally adequate mitigation measures from from the excessive heat. I have outlined how current policy is not being adhered to and the risks it poses.  There are no fans on the wings to protect inmates like the ones provided for staff recently. The ventillation systrem is either not always functioning or being utilized. Inamtes are still forced to wear winter clothing not appropriate for summer during hot weather season. There appears to be no attempt to mitigate the heat for inmates.

ZEPEDA ARB 0013

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE**

| Grievance Officer's Report |
|---|

**Date Received:** 09/25/2024      **Date of Review:** 09/26/2024      **Grievance #** (optional): 0924-3183

**Offender:** Zepeda, Francisco                                          **ID#:** Y30997

**Nature of Grievance:**

Conditions

**Facts Reviewed:**

Grievant states the temperature has been in excess of 90 degress from June-August 2024. Grievant
states wall mounted fans were installed in July 2024 and again in July 2024 to mitigate the heat.
Grievant states they have written grievances before on the issue and the ventilation system is not
functioning or being utilized.

**Relief requested:**
Fans installed on wings, food latches be open from morning to nightfall per policy

**Counselor response:**
Per maintenance, the ventilation system is working and there is air flow on the wings. The food latches
are to be opened on doors without vents. PNK CC doors have vents on them.

**Grievance officer response:**
The counselor addressed the grievant's issues appropriately.

**Recommendation:**

Based upon a total review of all available information, it is the recommendation of this Grievance
Officer that the grievance be DENIED.

RECEIVED

OCT 0 4 2024

ADMINISTRATIVE
REVIEW BOARD

J. Saddler, CCII

_____                    _____
Print Grievance Officer's Name                    Grievance Officer's Signature
(Attach a copy of Offender's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

**Date Received:**  9-21-24          ☒ I concur      ☐ I do not concur      ☐ Remand

**Action Taken:**

_____                                         9-26-24
Chief Administrative Officer's Signature                                   Date

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director.  I understand this appeal must, within 30 days after the date of the Chief
Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy
of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

_____          Y30997      10/1/24
Offender's Signature                      ID#            Date

ZEPEDA ARB 0011

J.B. Pritzker
Governor



Latoya Hughes
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Name:    Zepeda, Francisco

ID# :    Y30997

Facility:    CEN

1/16/25
Date

This is in response to your grievance received on __10/04/24__. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: 9/1/24    Grievance Number: 0924-3183    Griev Loc: PNK

☐ Medical

☐ Dietary

☐ Personal Property

☐ Mailroom/Publications

☐ Staff Conduct

☐ Commissary / Trust Fund

☑ Conditions (cell conditions, cleaning supplies, etc.) (June 2024 - August 2024) Claims ventilation system not working properly to mitigate

☐ Disciplinary Report: Dated: _____ Incident # 

☑ Other    Conditions continued: heat concerns for individuals in custody.

**Based on a review of all available information, this office has determined your grievance to be:**

☐ Affirmed

☐ Denied, in accordance with DR504F, this is an administrative decision.

☑ Denied, this office finds the issue was appropriately addressed by the facility Administration.

☐ Other: _____

☐ Denied as the facility is following the procedures outlined in DR525.

☐ Denied as procedures were followed in accordance with DR 420 for removal/denial from/for an assignment.

☐ Denied as this office finds no violation of the grievant's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offense cited in the report was committed.

FOR THE BOARD: _____
Ryan Nothnagle
Administrative Review Board

CONCURRED: _____
Latoya Hughes
Acting Director

CC: Warden, CEN _____ Correctional Center
Zepeda, Francisco _____, ID# Y30997

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

⚑ KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted  Prior Version Held Unconstitutional by  People v. Burdunice,  Ill.,  May 20, 2004

⚑ KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

West's Smith-Hurd Illinois Compiled Statutes Annotated
  Chapter 730. Corrections
    Act 5. Unified Code of Corrections (Refs & Annos)
      Chapter III. Department of Corrections
        Article 7. Facilities (Refs & Annos)

730 ILCS 5/3-7-2

Formerly cited as IL ST CH 38 ¶ 1003-7-2

5/3-7-2. Facilities

Effective: June 30, 2023
Currentness

§ 3-7-2. Facilities.

(a) All institutions and facilities of the Department shall provide every committed person with access to toilet facilities, barber facilities, bathing facilities at least once each week, a library of legal materials and published materials including newspapers and magazines approved by the Director. A committed person may not receive any materials that the Director deems pornographic.

(b) (Blank).

(c) All institutions and facilities of the Department shall provide facilities for every committed person to leave his cell for at least one hour each day unless the chief administrative officer determines that it would be harmful or dangerous to the security or safety of the institution or facility.

(d) All institutions and facilities of the Department shall provide every committed person with a wholesome and nutritional diet at regularly scheduled hours, drinking water, clothing adequate for the season, including underwear, bedding, soap and towels and medical and dental care. Underwear provided to each committed person in all institutions and facilities of the Department shall be free of charge and shall be provided at any time upon request, including multiple requests, of the committed person or as needed by the committed person.

(e) All institutions and facilities of the Department shall permit every committed person to send and receive an unlimited number of uncensored letters, provided, however, that the Director may order that mail be inspected and read for reasons of the security, safety or morale of the institution or facility.

(f) All of the institutions and facilities of the Department shall permit every committed person to receive in-person visitors and video contact, if available, except in case of abuse of the visiting privilege or when the chief administrative officer determines

that such visiting would be harmful or dangerous to the security, safety or morale of the institution or facility. Each committed person is entitled to 7 visits per month. Every committed person may submit a list of at least 30 persons to the Department that are authorized to visit the committed person. The list shall be kept in an electronic format by the Department beginning on August 1, 2019, as well as available in paper form for Department employees. The chief administrative officer shall have the right to restrict visitation to non-contact visits, video, or other forms of non-contact visits for reasons of safety, security, and order, including, but not limited to, restricting contact visits for committed persons engaged in gang activity. No committed person in a super maximum security facility or on disciplinary segregation is allowed contact visits. Any committed person found in possession of illegal drugs or who fails a drug test shall not be permitted contact visits for a period of at least 6 months. Any committed person involved in gang activities or found guilty of assault committed against a Department employee shall not be permitted contact visits for a period of at least 6 months. The Department shall offer every visitor appropriate written information concerning HIV and AIDS, including information concerning how to contact the Illinois Department of Public Health for counseling information. The Department shall develop the written materials in consultation with the Department of Public Health. The Department shall ensure that all such information and materials are culturally sensitive and reflect cultural diversity as appropriate. Implementation of the changes made to this Section by Public Act 94-629 is subject to appropriation. The Department shall seek the lowest possible cost to provide video calling and shall charge to the extent of recovering any demonstrated costs of providing video calling. The Department shall not make a commission or profit from video calling services. Nothing in this Section shall be construed to permit video calling instead of in-person visitation.

(f-5) (Blank).

(f-10) The Department may not restrict or limit in-person visits to committed persons due to the availability of interactive video conferences.

(f-15)(1) The Department shall issue a standard written policy for each institution and facility of the Department that provides for:

(A) the number of in-person visits each committed person is entitled to per week and per month including the requirements of subsection (f) of this Section;

(B) the hours of in-person visits;

(C) the type of identification required for visitors at least 18 years of age; and

(D) the type of identification, if any, required for visitors under 18 years of age.

(2) This policy shall be posted on the Department website and at each facility.

(3) The Department shall post on its website daily any restrictions or denials of visitation for that day and the succeeding 5 calendar days, including those based on a lockdown of the facility, to inform family members and other visitors.

(g) All institutions and facilities of the Department shall permit religious ministrations and sacraments to be available to every committed person, but attendance at religious services shall not be required.

(h) Within 90 days after December 31, 1996, the Department shall prohibit the use of curtains, cell-coverings, or any other matter or object that obstructs or otherwise impairs the line of vision into a committed person's cell.

(i) A point of contact person appointed under subsection (u-6) of Section 3-2-2 of this Code shall promptly and efficiently review suggestions, complaints, and other requests made by visitors to institutions and facilities of the Department and by other members of the public. Based on the nature of the submission, the point of contact person shall communicate with the appropriate division of the Department, disseminate the concern or complaint, and act as liaison between the parties to reach a resolution.

(1) The point of contact person shall maintain information about the subject matter of each correspondence, including, but not limited to, information about the following subjects:

(A) the parties making the submission;

(B) any commissary-related concerns;

(C) any concerns about the institution or facility's COVID protocols and mitigations;

(D) any concerns about mail, video, or electronic messages or other communications with incarcerated persons;

(E) any concerns about the institution or facility;

(F) any discipline-related concerns;

(G) any concerns about earned sentencing credits;

(H) any concerns about educational opportunities for incarcerated persons;

(I) any concerns about health-related matters;

(J) any mental health concerns;

(K) any concerns about personal property;

(L) any concerns about the records of the incarcerated person;

(M) any concerns about recreational opportunities for incarcerated persons;

(N) any staffing-related concerns;

(O) any concerns about the transfer of individuals in custody;

(P) any concerns about visitation; and

(Q) any concerns about work opportunities for incarcerated persons.

The information shall be maintained in accordance with standards set by the Department of Corrections, and shall be made available to the Department's Planning and Research Division. The point of contact person shall provide a summary of the results of the review, including any resolution or recommendations made as a result of correspondence with the Planning and Research Division of the Department.

(2) The Department shall provide an annual written report to the General Assembly and the Governor, with the first report due no later than January 1, 2023, and publish the report on its website within 48 hours after the report is transmitted to the Governor and the General Assembly. The report shall include a summary of activities undertaken and completed as a result of submissions to the point of contact person. The Department of Corrections shall collect and report the following aggregated and disaggregated data for each institution and facility and describe:

(A) the work of the point of contact person;

(B) the general nature of suggestions, complaints, and other requests submitted to the point of contact person;

(C) the volume of emails, calls, letters, and other correspondence received by the point of contact person;

(D) the resolutions reached or recommendations made as a result of the point of contact person's review;

(E) whether, if an investigation is recommended, a report of the complaint was forwarded to the Chief Inspector of the Department or other Department employee, and the resolution of the complaint, and if the investigation has not concluded, a detailed status report on the complaint; and

(F) any recommendations that the point of contact person has relating to systemic issues in the Department of Corrections, and any other matters for consideration by the General Assembly and the Governor.

The name, address, or other personally identifiable information of a person who files a complaint, suggestion, or other request with the point of contact person, and confidential records shall be redacted from the annual report and are not subject to disclosure under the Freedom of Information Act. The Department shall disclose the records only if required by a court order on a showing of good cause.

(3) The Department must post in a conspicuous place in the waiting area of every facility or institution a sign that contains in bold, black type the following:

(A) a short statement notifying visitors of the point of contact person and that person's duty to receive suggestions, complaints, or other requests; and

(B) information on how to submit suggestions, complaints, or other requests to the point of contact person.

(j) Menstrual hygiene products shall be available, as needed, free of charge, at all institutions and facilities of the Department for all committed persons who menstruate. In this subsection (j), "menstrual hygiene products" means tampons and sanitary napkins for use in connection with the menstrual cycle.

**Credits**
P.A. 77-2097, § 3-7-2, eff. Jan. 1, 1973. Amended by P.A. 81-346, § 1, eff. Aug. 31, 1979; P.A. 89-609, § 10, eff. Jan. 1, 1997; P.A. 89-659, § 5, eff. Jan. 1, 1997; P.A. 89-688, § 5, eff. June 1, 1997; P.A. 89-689, § 135, eff. Dec. 31, 1996; P.A. 90-14, Art. 2, § 2-50, eff. July 1, 1997; P.A. 91-912, § 10, eff. July 7, 2000; P.A. 94-629, § 94, eff. Jan. 1, 2006; P.A. 96-869, § 5, eff. Jan. 21, 2010; P.A. 99-933, § 20-105, eff. Jan. 27, 2017; P.A. 100-30, § 5, eff. Jan. 1, 2018; P.A. 100-142, § 5, eff. Jan. 1, 2018; P.A. 100-677, § 5, eff. Jan. 1, 2019; P.A. 100-863, § 585, eff. Aug. 14, 2018; P.A. 102-1082, § 5, eff. June 10, 2022; P.A. 102-1111, § 5, eff. June 1, 2023; P.A. 103-154, § 695, eff. June 30, 2023.

**Formerly** Ill.Rev.Stat.1991, ch. 38, ¶ 1003-7-2.

730 I.L.C.S. 5/3-7-2, IL ST CH 730 § 5/3-7-2
Current through P.A. 103-26 of the 2023 Reg. Sess. Some statute sections may be more current, see credits for details.

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.



JB Pritzker
Governor

Latoya Hughes
Acting Director

## The Illinois Department of Corrections

Pinckneyville Correctional Center
5835 State Route 154 • Pinckneyville, IL  62274-3410 • (618) 357-9722 TDD: (800) 526-0844

## MEMORANDUM

**DATE:**     July 28, 2023

**TO:**     All Staff

**FROM:**     David Mitchell, Warden

**SUBJECT:**     Prevention of Heat Related Illnesses

All staff need to be aware of the signs and symptoms of heat-related illnesses (hyperthermia) and assist in the prevention of such illness with the arrival of hot and humid weather.  Security staff provides the first opportunity for identification and referral; therefore, you must be aware of the individuals in custody around you.  This task may be complicated by the overlay of the current COVID-19 protective measures in place, however it is essential that you make medical and/or mental health staff aware of any concerns. If you notice an individual in custody acting strangely or drastically different from his/her norm, report it up your chain of command, both in writing and by telling one of the medical or mental health staff verbally. If you believe you have a concern that requires an immediate referral, please ensure the offender's safety and contact the appropriate healthcare staff to report your concerns.

Hyperthermia occurs when the body is unable to properly cool itself.  Symptoms may include:

- Anxiety
- Blood in urine or stool
- Confusion, delirium, or loss of consciousness
- Convulsions
- Decreased urination
- Drenching sweats often with cool (clammy) skin
- Dizziness
- Fainting
- Fatigue/weakness
- Headaches
- Hot, flushed, dry skin
- Muscle aches/cramps
- Nausea/Vomiting
- Shortness of breath

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

During hot and humid weather, individuals in custody who take certain types of psychotropic medications are at risk of developing hyperthermia. It is essential that we attempt to maintain indoor temperatures below 85 degrees fahrenheit. Please see below for direction when the heat index exceeds 85 degrees.

Heat Index 85 degrees and above
- Pass ice two times per day – once on 7-3 shift and once on 3-11 shift. Additionally, on the 3-11 shift, ice water shall be passed.
- Keep a close eye on individuals in custody who are behind solid doors.
- Ensure a supply of water and ice is available for buses/vans for emergency breakdowns.
- Advise staff to drink plenty of water and take needed breaks.
- For solid cell/room doors, absent any safety/security concerns, open food hatches in the morning until nightfall. Discretion is to be used, but documented, regarding safety and security issues (i.e. an individual in custody with a recent history of throwing bodily fluids/unknown substances or spitting).
- Shower frequency shall be increased at the discretion of the Warden.
- Ensure all cold-water taps work. Individuals in custody in cells with inoperable cold-water taps are to be moved to another cell until repair.
- Ensure all ventilation, box and oscillating fans are operable. Those that are not, are to receive priority repair or replacement.
- Ensure ventilation systems are operable.
- During gallery tours, all staff need to visually inspect status of individuals in custody and note any heat related issues.
- Medical staff is to identify those individuals in custody who may be susceptible to heat related illness and moved as recommended.
- Hard labor should be curtailed. Water must be available during working hours.
- Temperatures within the cells and on the wing/gallery, and at work assignments are to be documented on the shift reports.

Heat Index 90 Degrees
- Hard labor and physical training at boot camps shall be stopped.
- Cold water shall be made available if recreation is permitted outdoors. Employees and individuals in custody should be monitored for signs of heat related illness.

Heat Index 95 Degrees and above
- All non-essential labor shall be stopped. Essential labor should be approved only by the Warden.

Individuals in custody should be instructed to immediately report feelings of illness, and any with the symptoms listed above should be sent for medical evaluation. Medical personnel should be especially vigilant of the needs of persons with chronic conditions. The elderly, obese and those individuals in custody with cardiovascular disease, neurological or psychiatric disorders are at higher risk of hyperthermia as well as those who use medications such as anticholinergics or diuretics. The need for electrolyte fluids such as Gatorade should be provided only as determined by an institutional physician.

Please note that these recommendations are subject to change. The Office of Health Services will provide updates to this memo as necessary.



Heat Index Chart

**NWS Heat Index**  Temperature (°F)

| Relative Humidity (%) | 80 | 82 | 84 | 86 | 88 | 90 | 92 | 94 | 96 | 98 | 100 | 102 | 104 | 106 | 108 | 110 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 40 | 80 | 81 | 83 | 85 | 88 | 91 | 94 | 97 | 101 | 105 | 109 | 114 | 119 | 124 | 130 | 136 |
| 45 | 80 | 82 | 84 | 87 | 89 | 93 | 96 | 100 | 104 | 109 | 114 | 119 | 124 | 130 | 137 | |
| 50 | 81 | 83 | 85 | 88 | 91 | 95 | 99 | 103 | 108 | 113 | 118 | 124 | 131 | 137 | | |
| 55 | 81 | 84 | 86 | 89 | 93 | 97 | 101 | 106 | 112 | 117 | 124 | 130 | 137 | | | |
| 60 | 82 | 84 | 88 | 91 | 95 | 100 | 105 | 110 | 116 | 123 | 129 | 137 | | | | |
| 65 | 82 | 85 | 89 | 93 | 98 | 103 | 108 | 114 | 121 | 128 | 136 | | | | | |
| 70 | 83 | 86 | 90 | 95 | 100 | 105 | 112 | 119 | 126 | 134 | | | | | | |
| 75 | 84 | 88 | 92 | 97 | 103 | 109 | 116 | 124 | 132 | | | | | | | |
| 80 | 84 | 89 | 94 | 100 | 106 | 113 | 121 | 129 | | | | | | | | |
| 85 | 85 | 90 | 96 | 102 | 110 | 117 | 126 | 135 | | | | | | | | |
| 90 | 86 | 91 | 98 | 105 | 113 | 122 | 131 | | | | | | | | | |
| 95 | 86 | 93 | 100 | 108 | 117 | 127 | | | | | | | | | | |
| 100 | 87 | 95 | 103 | 112 | 121 | 132 | | | | | | | | | | |

**Likelihood of Heat Disorders with Prolonged Exposure or Strenuous Activity**

☐ Caution   ☐ Extreme Caution   ▦ Danger   ■ Extreme Danger

Heat Index Calculator

Please follow the link below for the National Weather Services' Heat Index Calculator and additional information.

https://www.weather.gov/okx/excessiveheat

cc:    AWO/AWP
       Shift Commanders
       Superintendent
       Dept. Heads
       Roll Call 5x's
       Bulletin Boards
       AFSCME
       File



ILLINOIS DEPARTMENT OF CORRECTIONS
## WORK ORDER

Work Order No. _7238 E_  Location _R-1_

Date _6-2-23_  Approval _____

Room _A WING_  Floor

DESCRIPTION OF WORK

Requested by ████████████

EXHAUST FANS ON A-WING ARE NOT WORKING

Labor Cost:

Material Cost:

| Assigned To | | Building | Priority | Hours | Date Completed |
|---|---|---|---|---|---|
| Electrician | ██████ | C07401 | / | | |

Distribution: Chief Engineer, Department Head, RWO

DOC 0431 (Eff. 9/2015)
(Replaces DC 806-1A)



ILLINOIS DEPARTMENT OF CORRECTIONS
**Purchase Request**

| Pinckneyville Correctional Center | | | | | | | | | 07/05/2023 |
|---|---|---|---|---|---|---|---|---|---|
| Facility / Division | | | OFD / Req. # | | Object Code | | | | Date |

| Item Requested | | | | Vendor #1 | | Vendor #2 | | Vendor #3 | |
|---|---|---|---|---|---|---|---|---|---|
| D. O. Code | Description of Item(s) | Qty. | Unit Size | Unit Price | Total Price | Unit Price | Total Price | Unit Price | Total Price |
| | 30" Wall Mount Fan #1RWB4 | 1 | each | $296.85000 | $296.85000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | Freight | | | | | |
| | | | | Total | $296.85000 | | $0.00000 | | $0.00000 |

**NOTE: This form is for purchases under $2,000.**

Justification:    R1 Core wall mount fan to increase air flow.

| Item Requested | | | | Vendor #4 | | Vendor #5 | | Vendor #6 | |
|---|---|---|---|---|---|---|---|---|---|
| D. O. Code | Description of Item(s) | Qty. | Unit Size | Unit Price | Total Price | Unit Price | Total Price | Unit Price | Total Price |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | Freight | | | | | |
| | | | | Total | $0.00000 | | $0.00000 | | $0.00000 |

**NOTE: This form is for purchases under $2,000.**

Justification:

|  | Vendor #1 | Vendor #2 | Vendor #3 |
|---|---|---|---|
| Name: | Grainger | | |
| Vendor #: | | | |
| Address: | | | |
| Phone #: | | | |
| Email Address: | | | |
| Contact Person: | | | |
| Comments: | | | |
|  | ☐ Awarded ☐ Written ☐ Verbal | ☐ Awarded ☐ Written ☐ Verbal | ☐ Awarded ☐ Written ☐ Verbal |

|  | Vendor #4 | Vendor #5 | Vendor #6 |
|---|---|---|---|
| Name: | | | |
| Vendor #: | | | |
| Address: | | | |
| Phone #: | | | |
| Email Address: | | | |
| Contact Person: | | | |
| Comments: | | | |
|  | ☐ Awarded ☐ Written ☐ Verbal | ☐ Awarded ☐ Written ☐ Verbal | ☐ Awarded ☐ Written ☐ Verbal |

Awarded Vendor's FEIN#: _____    If not low bidder, state justification in "comments."

**Ordering Procedure** (check one):    ☐ Mail OFD    ☐ FAX OFD    ☐ Contract Order # _____
☐ Requester will phone in: _____    ☐ Other: _____
Name of Contact

**Deliver to:**

Pinckneyville Correctional Center
Facility/Division

Maintenance
Department

5835 State Route 154
Address

Pinckneyville ___ IL ___ 62274
City    State    Zip Code

| Check Function Code | | |
|---|---|---|
| ☐ 01 Satellite #1 | ☐ 04 Security | ☐ 07 Warehouse/Dietary |
| ☐ 02 Satellite #2 | ☐ 05 Programs | ☐ 08 Clothing |
| ☐ 03 Medical | ☒ 06 Maintenance | ☐ 09 Administration |

**Requested by:**

_____    2427
Print Name    Extension

**Approved by:**

_____    _____
Department Head's Signature    Date

_____    _____
Business Administrator's Signature    Date

_____    _____
Chief Administrator's Signature    Date

*(handwritten, top left)* equip. list

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Purchase Request**

*(handwritten)* 8325009    1530    7/1/24

**Pinckneyville Correctional Center**
Facility / Division

OFO / Req. #    Object Code    Date
06/17/2024

| D.O. Code | Description of Item(s) | Qty | Unit -Size | Vendor #1 Unit Price | Vendor #1 Total Price | Vendor #2 Unit Price | Vendor #2 Total Price | Vendor #3 Unit Price | Vendor #3 Total Price |
|---|---|---|---|---|---|---|---|---|---|
| | 30" Industrial fan 1RWB4 | 10 | ea | $266.06000 | $2,660.60000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | Freight | | | | | |
| | | | | Total | $2,660.60000 | | $0.00000 | | $0.00000 |

NOTE: This form is for purchases under $2,000.

Justification: Fans needed for R1-R6 core area

| D.O. Code | Description of Item(s) | Qty. | Unit Size | Vendor #4 Unit Price | Vendor #4 Total Price | Vendor #5 Unit Price | Vendor #5 Total Price | Vendor #6 Unit Price | Vendor #6 Total Price |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | *Grainger* | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | *P-52692* | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | *7/1/23-11/8/26* | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | *R-226749* | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | | $0.00000 | | $0.00000 | | $0.00000 |
| | | | | Freight | | | | | |
| | | | | Total | $0.00000 | | $0.00000 | | $0.00000 |

NOTE: This form is for purchases under $2,000.

Justification:

Distribution:   Business Office

Printed on Recycled Paper
Page 1 of 2

DOC 0143 (Rev. 3/2021)

|  | Vendor #1 | Vendor #2 | Vendor #3 |
|---|---|---|---|
| Name: | Grainger | | |
| Vendor #: | | | |
| Address: | | | |
| Phone #: | | | |
| Email Address: | | | |
| Contact Person: | | | |
| Comments: | | | |
|  | ☐ Awarded  ☐ Written  ☐ Verbal | ☐ Awarded  ☐ Written  ☐ Verbal | ☐ Awarded  ☐ Written  ☐ Verbal |

|  | Vendor #4 | Vendor #5 | Vendor #6 |
|---|---|---|---|
| Name: | | | |
| Vendor #: | | | |
| Address: | | | |
| Phone #: | | | |
| Email Address: | | | |
| Contact Person: | | | |
| Comments: | | | |
|  | ☐ Awarded  ☐ Written  ☐ Verbal | ☐ Awarded  ☐ Written  ☐ Verbal | ☐ Awarded  ☐ Written  ☐ Verbal |

Awarded Vendor's FEIN#: _____          If not low bidder, state justification in "comments."

Ordering Procedure (check one):  ☐ Mail OFD    ☐ FAX OFD    ☐ Contract Order # _____
☐ Requester will phone in: _____    ☐ Other: _____
                            Name of Contact

**Deliver to:**

Pinckneyville Correctional Center
Facility/Division

Maintenance
Department

5835 State Route 154
Address

Pinckneyville          IL          62274
City                    State        Zip Code

**Requested by:**

[redacted]                                   2429
                              Print Name        Extension

**Approved by:**

[redacted]          Digitally signed by [redacted]          06/17/2024
                    Date 2024.06.17                          Date
                    Department Head's Signature

                                              7/1/24
                    Authorized Head's Signature   Date

                                              7/1/24
                                              Date

| Check Function Code | | |
|---|---|---|
| ☐ 01 Satellite #1 | ☐ 04 Security | ☐ 07 Warehouse/Dietary |
| ☐ 02 Satellite #2 | ☐ 05 Programs | ☐ 08 Clothing |
| ☐ 03 Medical | ☐ 06 Maintenance | ☐ 09 Administration |

Distribution:  Business Office          Printed on Recycled Paper          DOC 0143 (Rev. 3/2021)
                                         Page 2 of 2

Case 3:25-cv-01825-RJD    Document 12    Filed 11/25/25    Page 73 of 74    Page ID #145

ILLINOIS DEPARTMENT OF CORRECTIONS
**WORK ORDER**

| Work Order No. | 6-72 | | Location | R1, R2, R3, R4, R5, R6 |
|---|---|---|---|---|

Date 6/17/24    Approval C.S

| | |
|---|---|
| Room Core | Floor |
| Requested by | ████████ |

DESCRIPTION OF WORK

Install fans in Core

Labor Cost: 1500
Material Cost: #2660

| Assigned To | Auth. | Building | Priority | Hours | Date Completed |
|---|---|---|---|---|---|
| elect | CS | | 2 | 10 | 7-18-24 |

Distribution: Chief Engineer, Department Head, AWO

DOC 0431 (Eff. 9/2015)
(Replaces DC 806-1A)

IN The United States District Cort

Southern District of Illinois

Froncisco Zepeda, plase
        Plaintiff

                V,

Latcya Hughes, et. al.
        Defendents

Case No. 3:25-CV-01825-RUD

Certificate of Service

I hereby Certify that I have e-filed through Centralia C.C.'s
Law library :

1. Amended Complaint 13 pgs
2. Memorandun of Law      17 pgs
3. Summons                1 pg
4 Corr, Def Michell       1 pg
5 Grievance 24410-7-23 3 pgs
6 ARB response 24410723 1 pg
7. Corr, Def Hughes       2 pgs
8. Grievance 2771-08-23   3 pgs
9. ARB response 2771-08-23 1 pg
10 Corr, Def Berwick       2 pgs
11 Corr, Def Hughes        2 pgs

11. Corr, U.S. Dop. Justice  2pgs
12. Coss. Governer Pritzker  2pgs
13, Respose, Governer        1 pg
14, Gocc Resp Def Berwick  1pg
15, Corr Def Berwick         2/ss
16, Grievance K55-0924-23  3pgs
17. ARB Response 0924-23   1 pg
18, 730 ILCS 5/3-7-2         5/ss
19. Prevention of Heat related Il Policy 3pgs
20. Work Exhoust Fan Arning  1 ps
21 2023 Purchese Report      2pgs
22. 2024 Purchase Report     2pgs
23. 2024 Work order          1 pg

Totelly 23 pgs including this one

Dated 11/25/25