## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **FRANCISCO ZEPEDA, Y30997,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **LATOYA HUGHES,** | ) | **Case No. 25-cv-1825-RJD** |
| **DAVID MITCHELL,** | ) | |
| **JOHN BARWICK,** | ) | |
| **SGT. SPENCER,** | ) | |
| **SGT. HARPER, and** | ) | |
| **K. SMITH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**DALY, Magistrate Judge:**

Plaintiff Francisco Zepeda, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Centralia Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 while he was detained at Pinckneyville Correctional Center. In the Complaint (Doc. 1), Zepeda alleges that Defendants violated his rights related to excessive heat exposure and inadequate clothing for summer temperatures during the summers of 2023 and 2024. Zepeda's Complaint was dismissed for failure to state a claim, and he has now filed an Amended Complaint (Doc. 12) premised on the same basic facts.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A.[1]  Under Section 1915A, the Court is required to screen prisoner

---

[1] The Court has jurisdiction to screen the Complaint considering Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the Illinois Department of Corrections.

complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### THE AMENDED COMPLAINT

Zepeda's Amended Complaint contains factual allegations that are nearly identical to his original Complaint. He complains that the summers of 2023 and 2024 were extremely hot at Pinckneyville, and staff did not satisfactorily implement heat-related illness prevention measures (Doc. 12). Zepeda is a 50-year-old male, and he claims he has several medical conditions and related medications that increase his susceptibility to heat related illness. He baldly asserts in his Amended Complaint that "all defendants were personally aware of these risks and ignored them" (Doc. 12 at 5). In the Amended Complaint and supporting memorandum of law, Zepeda repeatedly cites *Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015) for the proposition that exposure to high heat indices can violate the Eighth Amendment (Doc. 12 at 5).

As with his earlier pleading, he points to grievances filed in July and August of 2023, and in September of 2024. The grievances complain of the high heat, the alleged failure to follow the heat illness policies, ventilation in the cells, and inappropriate clothing, but none of the grievances describe any physical maladies that Zepeda personally suffered from the heat exposure (Doc. 12 at 34-37, 40-43, 56-59). Nor do the grievances mention his own health conditions that he believes make him more susceptible to heat illness than the average person. In addition to the grievances, the Amended Complaint now contains copies of letters that Plaintiff alleges he sent to Defendants Mitchell (Doc. 12 at 33), Hughes (Doc. 12 at 38-39, 46-47), Barwick (Doc. 12 at 44-45, 54-55), the Department of Justice (Doc. 12 at 48-49), and Governor Pritzker (Doc. 12 at 50-51) in 2023

and 2024 concerning heat exposure. None of the letters mention his own personal medical situation, or any specific ill effects that Zepeda suffered from the heat.

Zepeda faults Defendant Spencer for failing to implement the heat illness policy on July 27, 2023, and Defendant Harper for the same on July 28, 2023 (Doc. 12 at 7). He alleges he showed them the policy and asked for chuckholes on the cells to be left open for ventilation, but they refused. Zepeda again blames Defendant Smith for providing false, misleading, or unhelpful responses to his grievances (Doc. 12 at 7, 9). Zepeda argues in his Amended Complaint that the very existence of a heat illness policy should be interpreted as proof that the defendants knew heat posed a danger and knowingly failed to act when they did not properly implement the policy. The memorandum of law accompanying his Amended Complaint is nearly identical to his previous memorandum. The sole exceptions are argument four where he adds caselaw about the ability of a grievance to create liability if it provides adequate knowledge of a serious condition (Doc. 12 at 18-19), and argument twelve where he adds Illinois caselaw (Doc. 12 at 31).

Zepeda included five enumerated claims for relief in his original complaint (Doc. 1 at 11), but he has narrowed his Amended Complaint to four claims (Doc. 12 at 11-12). He seeks declaratory judgment and compensatory and punitive damages (Doc. 12 at 12-13). In support of his amended complaint, he included a memorandum of law and copies of relevant grievances and letters (Doc. 12 at 14-74).

The Court will review the four enumerated claims exactly as they are set forth by Zepeda:

**Count 1:** *Monell* **claim against Defendants Hughes, Mitchell, and Barwick for failing to provide adequate policy and ensure the enforcement of the same at the expense of inmates' health and safety per cost cutting reasons (official misconduct);**

**Count 2:** **Eighth Amendment deliberate indifference claim against all defendants for failing to remedy dangerously hot conditions,**

**poor ventilation, and layers of dust and mold in ventilation system;**

**Count 3:** **Eighth Amendment claim for not making accommodations for vulnerable inmates during extremely high heat indexes against all Defendants and intentional infliction of emotional distress; and**

**Count 4:** **Obstructions-falsification of state document to influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States against Defendant K. Smith.**

(Doc. 12 at 11-12). The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

**DISCUSSION**

**Claim 1: *Monell* claim concerning policy for heat illness.**

Plaintiff again faults Defendants Hughes, Mitchell, and Barwick in their official capacities for the failure to properly implement the IDOC's heat illness policy during the summers of 2023 and 2024. He previously sought injunctive relief related to this claim, but he has dropped his demand for injunctive relief, which is fatal to this claim. As employees of the state, claims against Hughes, Mitchell, and Barwick are claims against the state itself, meaning Plaintiff cannot seek monetary compensation on an official capacity claim against these three defendants. *See e.g., Ames v. Randle*, 933 F.Supp.2d 1028, 1038 (N.D. Ill. Mar. 18, 2013) (explaining that suits against state officials in official capacity for money damages under § 1983 may not proceed); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

capacities are 'persons' [subject to an action for damages] under § 1983."). Therefore, Claim 1 must be dismissed.

**Claim 2:        Conditions of confinement against all defendants related to heat.**

To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), *citing Farmer v. Brennan*, 511 U.S. 825, 824 (1994). Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.* Many conditions standing alone are not sufficient to give rise to an Eighth Amendment conditions of confinement claim, but they must also be considered collectively. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009).

Specifically in relation to temperature, courts have found that exposure to prolonged cold or prolonged heat can constitute a condition of confinement sufficient to invoke the Eighth Amendment. *See e.g., Dixon v. Godinez*, 114 F.3d 640 (7th Cir. 1997) (reversing a grant of summary judgment concerning prolonged exposure to cold); *Ames v. Randle*, 933 F.Supp.2d 1028, 1035 (N.D. Ill. Mar. 18, 2013) (allowing an inmate to proceed beyond a motion to dismiss on the allegation that he faced numerous conditions, including a lack of adequate ventilation that caused stifling high temperatures); *Phillips v. Reagal*, 2023 WL 5627993 (S.D. Ind. Aug. 31, 2023) (collecting cases about extreme temperatures in prison and allowing an inmate to proceed against

two prison employees related to extreme heat he faced while in segregation).  Zepeda relies heavily on *Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015), a case wherein staff at a Louisiana prison were found to be deliberately indifferent to the risk posed by extreme heat in death row cells. In *Ball*, conditions were like those described by Zepeda in so much as the cells were cooled by shared fans, the heat often exceeded 88 degrees, inmates had limited access to ice, and the plaintiffs had various health conditions that experts said made them more susceptible to heat. Each of the three plaintiffs filed grievances alerting the defendants that the extreme heat was exacerbating their personal medical conditions. Furthermore, the prison was taking steps independently to try to cool the cells better during the relevant period, and they monitored some inmates with medical infirmities closer during the heat but failed to monitor the three plaintiffs despite them having qualifying conditions.

In the Amended Complaint, Zepeda again focuses heavily on the existence of prison policies and rules concerning the heat. Specifically, he argues that defendants failed to follow the July 2023 memorandum concerning preventing heat related illness (Doc. 12 at 65-66), and they failed to provide seasonally appropriate clothing. He argues that the existence of these policies and rules should lead to an inference that defendants knew heat was a risk. As the Court previously explained, the violation of a prison policy or state statute does not equate to a constitutional violation. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (violations of departmental regulations or policies, or even state laws, are not equivalent to a violation of § 1983). At most, the memo serves as evidence that prison officials generally believed vigilance was important during hot weather, but the memo does not provide evidence that any of the defendants knew of specific dangers for Zepeda or that they deliberately disregarded those known risks.

The key distinction between Zepeda's allegations, and those in cases like *Ball v. LeBlanc*, is that Zepeda's correspondence to defendants and in-person interactions with defendants provided

them with no notice that he personally suffered from medical conditions that may be exacerbated by heat. Zepeda is correct in arguing that a conditions of confinement claim does not necessarily require that an inmate suffer harm before he can bring a claim, but his allegations do not even establish that defendants knew there was a serious risk of harm specific to him. As for Defendants Harper and Spencer, he alleges he spoke with each one on a single occasion in the cellhouse, he showed them the memo on heat illness, and he asked them to leave the food port open for added air circulation. He faults them for refusing. Generally, a single interaction with a prison employee is not sufficient to establish a constitutional violation absent extreme circumstances. *Owens v. Duncan,* 788 F. App'x 371, 374 (7th Cir. 2019) (a single interaction with staff at sick call did not amount to deliberate indifference); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) ("isolated instances of neglect … cannot support a finding of deliberate indifference"). Zepeda does not describe the conditions on the specific days he spoke to these two defendants, he does not indicate he told them about his medical conditions that made him more susceptible to heat, and he does not allege that he expressed physical distress or had visible symptoms of malaise. Without any factors such as these that might have alerted Harper or Spencer to Zepeda's particular susceptibility to heat, he has not pled a plausible Eighth Amendment claim against them.

Zepeda claims in the text of his complaint that Defendants Hughes, Mitchell, Barwick, and Smith were all aware of his medical conditions by baldly asserting "all defendants were personally aware of these risks and ignored them" (Doc. 12 at 5). He further claims that he identified his risks in grievances and letters, but the exhibits to his complaint simply do not support this assertion. None of the grievances or letters notify the defendants that Zepeda possessed any of the medical conditions that make an individual more susceptible to heat, nor did the correspondence alert the defendants that Zepeda was experiencing increased malaise linked to the heat. This is a critical

distinction from the *Ball v. LeBlanc* case where the Court noted "each inmate filed administrative complaints explaining that the heat was exacerbating his conditions[.]" 792 F.3d 584, 590 (5th Cir. 2015). The *Ball* Court also emphasized that in addition to the complaints, there was evidence that the prison was actively working to remediate the heat during the relevant period, suggesting administrators affirmatively knew the heat posed an active danger. Zepeda simply does not have any evidence that suggests he notified any of the defendants of his own medical infirmities or the impact the heat had on him related to those conditions. As such, Zepeda has again failed to plead a claim against Hughes, Barwick, Mitchell, or Smith for their alleged failure to investigate and remediate his complaints about heat mitigation raised in the grievance process or via other correspondence.

**Claim 3:     Failure to accommodate vulnerable inmates and intentional infliction of emotional distress.**

Zepeda has not provided any new allegations to support this claim. The Court previously informed him that his factual allegations were insufficient to state a claim under the Americans with Disabilities Act, and without new allegations, the claim still fails. Additionally, Zepeda has not pled facts sufficient to demonstrate that any of the defendants intentionally inflicted emotional distress, and even if he had, the Court declines to exercise supplemental jurisdiction over any such claim.

**Claim 4:     Obstruction or falsification of documents by Defendant K. Smith.**

Nothing has changed about Zepeda's allegations concerning falsification of records. In the memorandum of law, Zepeda still cites to 18 U.S.C. §1519, a provision that criminalizes the falsification of records and documents within a department or agency of the United States. Section 1519 does not provide a valid basis for a claim because Zepeda alleges that Defendant Smith functioned as an employee of the state, so her conduct does not fall within the scope of this criminal

statute. Additionally, private individuals do not have authority to initiate criminal prosecutions for violations of federal law, so Zepeda cannot proceed on Claim 4.

Having reviewed Zepeda's allegations twice and given that almost nothing changed from his original to his amended complaint, the Court finds it unnecessary to invite further amendments. *See e.g. Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022) (amendment would be futile if plaintiff already had multiple chances to cure deficiencies); *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021) (courts may deny leave to amend if an amendment would be futile); *McCree v. Grissom*, 657 F.3d 623, 624 (7th Cir. 2011) (leave to amend shall be granted where justice so requires, but leave to amend need not be given if an amendment to the complaint would be futile). As such, this case is now dismissed for failure to state a claim under 28 U.S.C. § 1915A. This dismissal shall count as a strike for purposes of 28 U.S.C. § 1915(g).

## DISPOSITION

Zepeda's Amended Complaint (Doc. 12) is **DISMISSED** with prejudice for failure to state a claim under 28 U.S.C. § 1915A. The Clerk of Court shall enter judgment and **CLOSE** this case. Zepeda's Motion for Service of Process at Government Expense (Doc. 3) is **DENIED as MOOT**.

If Zepeda wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Zepeda chooses to appeal, he will be liable for the $605.00 filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-56 (7th Cir. 2008). Moreover, if the appeal is found to be nonmeritorious, Zepeda may incur another "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure

59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

Dated: August 4, 2026

**Reona J. Daly**
**United States Magistrate Judge**